■ In the Matter of LINDA S. CHAMBERLIN, Respondent, v BOYD M. CHAMBERLIN, Appellant. [658 NYS2d 751] —Crew III, J. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered January 25, 1996, which, *inter alia*, denied respondent's cross application, in a proceeding pursuant to Family Court Act article 4, to terminate respondent's support obligation with respect to the parties' older son.

The parties were married in 1972 and have two sons, born in 1977 and 1983, respectively. Following the parties' divorce in 1985, respondent was directed to pay $70 per week in child support until such time as the older son (hereinafter the child) attained majority, became emancipated or died, at which time respondent's weekly obligation was to be reduced by $30. Thereafter, in May 1991, the parties stipulated to a $30 per week increase in support, bringing respondent's total child support obligation to $100 per week.

Petitioner subsequently commenced this proceeding in August 1995 seeking an upward modification in support, and respondent cross-petitioned to terminate his support obligation with respect to the child, contending that the child had abandoned him. At the conclusion of the hearing that followed,

the Hearing Examiner issued his report and, ultimately, Family Court determined, *inter alia*, that the child's actions would not relieve respondent of his support obligation as long as the child continued to be a full-time student and reside in petitioner's home. This appeal by respondent followed.

To be sure, a parent has a statutory obligation to support his or her child until such time as the child reaches 21 years of age (*see*, Family Ct Act § 413 [1] [a]). It is well settled, however, that "while the duty to support is a continuing one, the child's right to support and the parent's right to custody and services are reciprocal" (*Matter of Roe v Doe*, 29 NY2d 188, 193), i.e., in exchange for child support, a parent may impose reasonable regulations upon his or her child (*see*, *id.*). To that end, a child of employable age, who actively abandons the noncustodial parent by refusing all contact and visitation, without cause, may be deemed to have forfeited his or her right to support (*see generally*, *Hiross v Hiross*, 224 AD2d 662, 663; *Radin v Radin*, 209 AD2d 396; *Matter of Alice C. v Bernard G. C.*, 193 AD2d 97, 109; *Cohen v Schnepf*, 94 AD2d 783, 784).

Here, the conflict between respondent and the child may be traced to an incident that occurred in April 1989, at which time the child was 11 years old. While visiting respondent, the child overheard respondent and a friend having a conversation, during which the friend made a statement about one of the children in the house and respondent laughed. Embarrassed by the comment and by respondent's reaction, the child decided that he no longer wished to have a relationship with respondent.

The credible evidence at the hearing established that respondent thereafter apologized to the child and, together with the friend who made the offending comment, explained to the child that the statement had not been directed at him personally. Respondent's spouse also attempted to reason with the child and encouraged him to resolve this misunderstanding with respondent, as did petitioner. Notwithstanding the child's steadfast refusal to participate in scheduled visitations, respondent continued to ask the child to attend visitations and repeatedly attempted to engage the child in conversation, only to be met with one-word responses. Respondent and his spouse also unsuccessfully sought counseling in an effort to foster a positive relationship between respondent and the child. Finally, the record indicates that, with the exception of the child's 18th birthday, respondent provided the child with gifts on his birthday and at Christmas and invited the child to participate in holiday celebrations and vacations. For his part, the child

candidly testified that he had no desire to see respondent, that he never telephoned respondent or sent him a Christmas card or present and that he had no need for respondent to be a part of his life.

There can be little doubt that "where it is the parent who causes a breakdown in communication with his child, or has made no serious effort to contact the child and exercise his visitation rights, the child will not be deemed to have abandoned the parent" (*Matter of Alice C. v Bernard G. C.*, 193 AD2d 97, 109, *supra*). A review of the record in this proceeding, however, plainly reveals that respondent made repeated and meaningful attempts to mend his relationship with the child (*compare, Radin v Radin, supra* [infrequent telephone calls do not constitute a serious attempt to maintain a relationship with a child]; *Matter of Jaffee v Jaffee*, 202 AD2d 264 [no indication that noncustodial parent made any serious effort to establish and maintain relationship with child]; *Matter of Wikoff v Whitney*, 179 AD2d 924, 926 [same]), and that the child's refusal to have anything to do with respondent goes far beyond a mere reluctance to attend visitations (*compare, Radin v Radin, supra; Matter of Jaffee v Jaffee, supra*). The child, who was of employable age at the time that the modification petition was filed, consistently refused all overtures by respondent, and there is nothing in the record to suggest that there was any justification, i.e., malfeasance, misconduct, neglect or abuse, for the child's actions in this regard (*see, Matter of Rubino v Morgan*, 224 AD2d 903, 904). Under these circumstances, we are of the view that the child's persistent rejection of respondent's repeated and meaningful attempts, made over the course of a six-year period (1989 to 1995), to mend the parent/child relationship constitutes abandonment resulting in the forfeiture of his right to support (*see, id.; see also, Matter of Commissioner of Social Servs. [Jones] v Labbay*, 227 AD2d 618, 619).*

Cardona, P. J., Mercure, White and Carpinello, JJ., concur. Ordered that the order is reversed, on the law and the facts, without costs, and respondent's cross petition to terminate his support obligation with respect to the parties' oldest son is granted.

---

* As for the Hearing Examiner's finding that the child should not be held accountable for his conduct due to his age or immaturity, while such factors may have been relevant to understanding the child's response to the underlying incident at the time that it occurred, at which point he was 11 years old, we cannot overlook the fact that the child was 18 years old and a senior in high school at the time of the hearing. In our view, it is not unrealistic to expect that the child would have gained some perspective with respect to the precipitating event during the intervening years.