■ In the Matter of PAMELA L. SMITH, Respondent, v WILLIAM E. BOMBARD, Appellant. (And Another Related Proceeding.) [741 NYS2d 336] —Peters, J. Appeals (1) from an order and amended order of the Family Court of Warren County (Austin, J.), entered February 16, 1999 and February 25, 1999, which, inter alia, dismissed respondent's application, in a proceeding pursuant to Family Court Act article 6, for modification of a prior order of custody, (2) from an order and amended order of said court, entered February 16, 1999 and February 25, 1999, which, inter alia, dismissed respondent's application, in a proceeding pursuant to Family Court Act article 4, to suspend payments for child support, and (3) from a judgment of said court, entered March 3, 1999, awarding petitioner unpaid child support.

This is the latest phase in a course of protracted and acrimonious litigation between these parties, now divorced, concerning the custody/visitation provisions of a June 19, 1992 order which determined, on consent, that custody of the parties' two daughters, Kristina (born in 1982) and Ciara (born in 1988), shall be with petitioner and that respondent be granted weekend visitation. After the issuance of the stipulated order, respondent regularly exercised his alternate weekend visitation with both children until August 1993 when he unilaterally decided to relocate to California. With an undisclosed location, an inability for the children to call him and an uncertain return, petitioner requested a modification of the visitation provisions fearing the psychological effects of respondent's alleged abandonment; visitation was temporarily suspended. Approximately one year later, respondent sought renewed visitation by telephone and, despite petitioner's objection, access was ordered. Subsequent orders of modification awarded incrementally increasing visitation between respondent and Kristina; Ciara had refused to maintain any contact with respondent since his departure.

Respondent returned from California in September 1995. In October 1995, petitioner successfully pursued an action alleging a willful violation of support which was affirmed by this Court (*see, Bombard v Bombard*, 254 AD2d 529, *lv denied* 93 NY2d 804). Temporary orders thereafter followed, increasing respondent's access to Kristina from supervised to unsupervised visitation; nothing appeared to influence Ciara's refusal to have contact with respondent. By February 1996, the torrent of pleadings and accusations swelled when respondent alleged that petitioner verbally berated him over the telephone as Ciara inadvertently listened, thus firming her resolve to maintain no contact with him. With outstanding petitions alleging a support violation, respondent countered with petitions alleging parental alienation. He was now seeking, inter alia, full custody of both children and a suspension of his support obligation for Ciara. Petitions and counterpetitions followed.

Family Court consolidated these petitions under the umbrella of a plenary challenge to the underlying custody and support orders. A lengthy hearing was held where testimony was received from numerous witnesses, including two psychologists who specifically addressed Ciara's refusal to resume visitation with respondent. On February 16, 1999, Family Court issued a decision and orders concerning custody, visitation and support, later amended on February 25, 1999, which, inter alia, directed that custody remain with petitioner, that respondent's visitation with Kristina be continued, but that contact with Ciara be limited to individual and family counseling sessions for both the parties and the children "for so long as the counselor deems necessary." Family Court thereafter issued a judgment, entered March 3, 1999, awarding petitioner unpaid child support.

On or about March 10, 1999, respondent filed a notice of appeal challenging each of the aforementioned decisions, orders and amended orders and judgment. By letter order dated May 4, 1999, Family Court, sua sponte, modified its decision and order pertaining to custody and visitation by deleting those aspects which required each of the parties and the children to undergo counseling.[1] No appeal was taken from the modified order. On appeal, respondent contends that Family Court erred in not suspending his support obligation with regard to Ciara and in its modification of the custody/visitation order when it, sua sponte, deleted the requirement for family counseling.

---

1. Instead, Family Court ordered that Ciara be enrolled in a mentoring program selected by petitioner and that she attend individual counseling within six months after its commencement. As to Kristina, the court permitted her to choose whether to undergo individual counseling.

Addressing the issue of support, we recognize that while a parent has a statutory duty to support his or her child until the age of 21 (*see,* Family Ct Act § 413 [1] [a]), " 'the child's right to support and the parent's right to custody and services are reciprocal' " (*Matter of Chamberlin v Chamberlin,* 240 AD2d 908, 909, quoting *Matter of Roe v Doe,* 29 NY2d 188, 193). Where it can be established by the noncustodial parent that the custodial parent has unjustifiably frustrated the noncustodial parent's right of reasonable access, child support payments may be suspended (*see, Matter of Kershaw v Kershaw,* 268 AD2d 829, 830; *Matter of Wiegert v Wiegert,* 267 AD2d 620, 621; *Matter of Alexander v Alexander,* 129 AD2d 882, 883; *cf.,* Domestic Relations Law § 241).

Respondent's contention that actions taken by petitioner and her husband between August 1993 and April 1995 were intentionally perpetrated for the sole purpose of alienating Ciara against him is contradicted by the record. In fact, the evidence established that petitioner and her husband encouraged Ciara to have a relationship with respondent and provided the children with the letters he sent. It was respondent's own behavior that significantly altered his relationship with his daughters. For example, on November 11, 1994, respondent left a threatening telephone message on petitioner's home answering machine wherein he indicated that he had a "bullet" for petitioner's husband and Ciara heard the message. Since then, Ciara has had nightmares about respondent abducting her and killing petitioner's husband, whom she refers to as "daddy." Evidence further established that following this incident, respondent did not attempt to contact his children until April 1995. Hence, with the uncontroverted testimony of two psychologists confirming that Ciara's refusal to see respondent was not the result of "parental alienation syndrome," we find that he failed to sustain his burden of demonstrating that his support obligation for Ciara should have been suspended.[2] With respondent's petition for custody suffering from a similar failure of proof, we find that it was appropriately dismissed.

As to Family Court's modification of its prior order issued nearly two months after respondent filed his notice of appeal, the failure by respondent to have filed an appeal with respect thereto precludes our review (*see,* CPLR 5513 [a]; 5515). Were we to address the modification, we would have found no error since Family Court "possess[ed] sufficient information to en-

---

2. Neither information submitted through respondent's pro se brief, which is dehors the record, nor issues raised for the first time on appeal were considered.

able it to engage in an independent comprehensive review of the child[ren's] best interest[s]" (*Matter of Williams v Mullineaux*, 271 AD2d 869, 870), without the need for a further evidentiary hearing (*cf.*, *Matter of Davies v Davies*, 223 AD2d 884, 886-887). Modification of the counseling provisions was wholly contemplated by the original order and such modification occurred as a result of the condition under which it was contemplated—counselor indication that it would be detrimental for Ciara to attend sessions with respondent.

Crew III, J.P., Spain and Lahtinen, JJ., concur. Ordered that the orders, amended orders and judgment are affirmed, without costs.

