In the Matter of DAWN L. NAYLOR, Respondent, v SCOTT GALSTER, Appellant. (Proceeding No. 1.) (And Two Other Related Proceedings.) In the Matter of SCOTT GALSTER, Appellant, v VANESSA GALSTER, Respondent. (Proceeding No. 2.) [851 NYS2d 683]—

Lahtinen, J. Appeals (1) from an order of the Family Court of Otsego County (Burns, J.), entered October 17, 2005, which, among other things, granted petitioner's applications, in three proceedings pursuant to Family Ct Act article 4, for modification of a prior order of support, and (2) from an order of said court, entered May 31, 2006, which, in proceeding No. 2 pursuant to Family Ct Act article 6, granted respondent's motion to dismiss the petition.

Dawn Naylor (hereinafter the mother) married Scott Galster (hereinafter the father) in 1984, they had a daughter (respondent in proceeding No. 2) in 1987 and divorced in 2000. The mother had physical custody and, at a hearing in January 2003 on a modification petition, the father agreed to an order (entered

in February 2003) providing that all visitation and contact between him and the child would be initiated by the child. On September 2, 2004, the mother filed two petitions to modify the child support order to include reimbursement and payment of college expenses, and the father petitioned in February 2005 to terminate child support essentially upon the ground that the child had forfeited her right to support by failing to have any contact with him. In an October 2005 order, Family Court granted the mother's petitions to the extent of directing that the father reimburse the mother for 70% of certain college expenses of the child, and the court dismissed the father's petition. In March 2006, the father commenced proceeding No. 2 against the daughter requesting, among other things, that Family Court "restore full contact [and] weekly visitation." Family Court granted the daughter's motion to dismiss the petition in May 2006. The father appeals from the October 2005 and May 2006 orders.

The father initially argues that Family Court erred in denying his application to terminate child support upon the ground that the child had abandoned him. A child's right to support until age 21 may be forfeited if the child, having reached an employable age, "actively abandons the noncustodial parent by refusing all contact and visitation, without cause" (*Matter of Chamberlin v Chamberlin*, 240 AD2d 908, 909 [1997]; *see Labanowski v Labanowski*, 4 AD3d 690, 695 [2004]). A parent who agrees to a visitation provision premised solely on the desires of a child faces a difficult burden in establishing abandonment when the contact thereafter is infrequent (*see Matter of Wikoff v Whitney*, 179 AD2d 924, 925-926 [1992]; *see also Matter of Marotta v Fariello*, 207 AD2d 450, 451-452 [1994]). Here, the father agreed to such a provision and, while there apparently was no planned visitation thereafter, occasional unplanned contacts occurred. The record does not establish an active abandonment by the daughter without cause and, accordingly, we find no error in Family Court's refusal to terminate the father's child support obligation.

Next, we consider the father's contention that he should not have been directed to contribute to the child's college expenses. Where, as here, college expenses are not addressed in the parties' separation agreement, an award of such expenses may nevertheless be made when the court "determines, having regard for the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires, that [a college] education for the child is appropriate" (Family Ct Act § 413 [1] [c] [7]; *see* Domestic Relations Law § 240 [1-b]

[c] [7]). Relevant factors include the child's academic ability, the parents' educational background and the ability to pay (*see Brough v Brough*, 285 AD2d 913, 917 [2001]; *Matter of Haessly v Haessly*, 203 AD2d 700, 701-702 [1994]). Here, the child's academic aptitude is clearly established by the fact that she began taking college courses at age 15 and has maintained an exceptionally high grade point average. The father's ability to pay, while not developed in detail, is not seriously disputed and the record, as a whole, reveals that he has such ability.* The allocation of 70% of such expenses to him was premised upon an earlier proceeding involving the father and mother in which the payment of uninsured medical expenses were set at such rate based upon their respective earnings. Notably, the mother's income had since declined as she decreased her work load to care for another child who was sick and died of cancer. The parents' educational backgrounds were not set forth at the hearing, but in light of the daughter's obvious academic abilities and the absence of any assertion that she should not be attending college, such omission is not fatal. We are not persuaded that Family Court's determination, which fosters the best interests of the child and enhances justice under all the circumstances of this case, should be reversed.

There is, however, merit to the father's assertion that the modification of support to include college expenses should not have been made retroactive to college costs that were paid before the mother filed the modification petitions (*see generally* Family Ct Act § 449 [2]; *Matter of Carella v Collins*, 272 AD2d 645, 646 [2000]; *Matter of Howard v Johnson*, 227 AD2d 929, 930 [1996]; *Matter of Aiken v Aiken*, 115 AD2d 919, 920 [1985]). The remaining arguments have been considered and found to be without merit.

Mercure, J.P., Spain, Rose and Kane, JJ., concur. Ordered that the order entered October 17, 2005 is modified, on the law, without costs, by directing that respondent Scott Galster pay only those college expenses that were incurred after the filing of petitioner Dawn L. Naylor's September 2, 2004 modification petitions in proceeding No. 1, and, as so modified, affirmed. Ordered that the order entered May 31, 2006 is affirmed, without costs.

* For example, a subsequent order in the supplemental record recites the father "has accumulated, and now owns both in his personal and business capacity, approximately 10 motor vehicles, a motor boat, and an airplane."