■ AMY B. LABANOWSKI, Now Known as AMY PARKER, Respondent-Appellant, v JEFFRY E. LABANOWSKI, Appellant-Respondent. [857 NYS2d 737]—

Spain, J.

Plaintiff (hereinafter the mother) and defendant (hereinafter the father) are the parents of three children. Around the time of the parties' separation, their children became estranged from the father. In April 2003, after a full hearing, Supreme Court (Aulisi, J.) found the mother to be in contempt for her "willful failure, either by omission or commission" to comply with the visitation orders of the court. On appeal, this Court—in February 2004—affirmed the contempt finding, but modified the punishment (4 AD3d 690, 694 [2004]).[1]

In March 2004, a divorce settlement resolving all pending matters was reached in Supreme Court and placed on the record in open court with the ultimate goal of reuniting the two youngest children with the father. In October 2004, a judgment was entered reflecting all aspects of the parties' stipulation, including the agreed-upon provisions that both parties withdraw all pending motions and petitions, that their previously agreed-upon joint custody arrangement would continue, that the father pay child support for the two youngest children, Vatoria (born in 1988) and Joshua (born in 1990) (hereinafter the children) until they are 21 or are sooner emancipated, and that the mother shall be responsible for 100% of the children's college expenses. On the advice of therapists who examined the children, the parties agreed in their stipulation and judgment that the father's parenting time with the children "shall be placed on hold while the therapists move forward with the children with therapy with the ultimate goal of providing a true and fair opportunity for the children and the [f]ather to re-establish their relationship and for the children to be healed." Notably, the stipulation and judgment fail to set any specific timetable or conditions for lifting the "hold."

---

1. This Court's decision also affirmed Supreme Court's finding that the eldest daughter, Cassandra, who was 20 years of age at the time and who is not a subject of this appeal, had constructively emancipated herself and was no longer entitled to child support (4 AD3d at 695-696).

The stipulated judgment also, among other things, suspended Supreme Court's previous judgment of willful contempt against the mother, giving her an opportunity to purge herself. Both parties agreed to take the children as dependents for tax exemption purposes in alternate years and were relieved of any obligation to reimburse the other for any unpaid child support arrears or unreimbursed medical expenses as of March 9, 2004; from that day forward, the parents agreed to share equally all of the children's unreimbursed medical expenses.

In May 2006, more than two years after the stipulated suspension of his access to the children, the father moved for termination of his child support obligations as to each of them—ages 17 and 15 at that time—based on their abandonment. In opposition, the mother asked Supreme Court to dismiss the father's application and cross-moved for an order modifying the judgment of divorce by granting her (1) the exclusive right to claim the children as tax exemptions and (2) an order directing that the father retroactively modify his past three years' tax returns to allow the mother to claim the children as dependents for those years in return for her paying all their unreimbursed medical expenses retroactive to the date of the settlement.

Without the benefit of a hearing, Supreme Court (Sise, J.) granted the father's motion only as to Vatoria, then 18 years old, terminating her child support as of her 18th birthday, but denied the father's motion as to Joshua because he was not yet of employable age. The court also denied the mother's cross motion based on her failure to establish a substantial change in circumstances. The father and the mother now each appeal.

Generally, in this state, a parent is obligated to support a child until the child turns 21 years of age (*see* Domestic Relations Law § 240 [1-b] [b] [2]; Family Ct Act § 413 [1] [a]). However, "a child of employable age, who actively abandons the noncustodial parent by refusing all contact and visitation, without cause, may be deemed to have forfeited his or her right to support" (*Matter of Chamberlin v Chamberlin*, 240 AD2d 908, 909 [1997]; *see Matter of Rubino v Morgan*, 224 AD2d 903, 903-904 [1996]; *Cohen v Schnepf*, 94 AD2d 783, 783-784 [1983]), a concept sometimes referred to as "the doctrine of self-emancipation" (Sobie, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 413, 2008 Cum Pocket Part, at 15-19). "[A] noncustodial parent seeking to suspend child support payments has the burden to establish the lack of justification for the child's refusal to maintain contact" (*Matter of Wiegert v Wiegert*, 267 AD2d 620, 621 [1999]; *see Matter of Ogborn v Hilts*, 269 AD2d 679, 680 [2000]), and a

child's justified refusal to continue a relationship due to a parent's malfeasance, misconduct, neglect or abuse, will not be considered self-emancipation (*see Matter of Wiegert v Wiegert*, 267 AD2d at 621). Additionally, where "the custodial parent has unjustifiably frustrated the noncustodial parent's right of reasonable access, child support payments may be suspended" despite the age of the child(ren) (*Matter of Smith v Bombard*, 294 AD2d 673, 675 [2002], *lv denied* 98 NY2d 609 [2002]; *see Foster v Daigle*, 25 AD3d 1002, 1004-1005 [2006], *lv dismissed* 6 NY3d 890 [2006]; *Usack v Usack*, 17 AD3d 736, 737-740 [2005]), although not where young children are likely to become impoverished (*see Usack v Usack*, 17 AD3d at 739-740; *Matter of Kershaw v Kershaw*, 268 AD2d 829, 830 [2000]). Notably, in circumstances as here, where a parent consents—with a goal toward reunification—to an order limiting contact or visitation, the parent may be temporarily precluded from claiming abandonment, although such a claim could be raised after the period specified in the agreement/order or, if one is not specified, after a reasonable period of time (*see e.g. Matter of Marotta v Fariello*, 207 AD2d 450, 451-452 [1994]).

Here, the parties settled all their differences in Supreme Court in 2004 when the father agreed, among other things, to pay child support. In our view, any alleged change in circumstances would have to be established by the father based on events subsequent to that agreement, a period in which the father had initially consented that his access to the children would be suspended while therapists worked with them, although, unfortunately, no durational limit was established and no court date set to assess progress or reevaluate. On the record before Supreme Court, little was known about what had occurred since the stipulated settlement and it was not clear who bore responsibility for the lack of progress in establishing a positive relationship between the children and their father—one or both of the parents, the children or others. Proof may or may not show that the children refused to cooperate with therapists or unreasonably and unjustifiably continued to refuse to have contact with their father thereafter. Such a determination should only be made after a full hearing[2] (*see Bartlett v Bartlett*, 197 AD2d 821, 822 [1993]). Accordingly, the determination on the father's application to terminate child support should be re-

---

**2.** The issues in this case implicate a child's right to adequate support. It is, thus, troubling that the Law Guardian assigned in Supreme Court to represent the children took no position on the father's motion to terminate their child support. To be distinguished, a separate Law Guardian assigned by this Court to represent the children on this appeal has opposed the termination or suspension of child support as to each of the children.

versed and the matter remitted to Supreme Court for a full evidentiary hearing at which the children, represented by a new law guardian, should be given an opportunity to be heard.

Finally, Supreme Court properly denied the mother's cross motion to modify the judgment of divorce to allow her to take the tax deduction each year. Indeed, such an agreement cannot be modified absent a showing that there has been an unanticipated and unreasonable change in circumstances (*see Matter of Brescia v Fitts*, 56 NY2d 132, 138 [1982]; *see also Matter of Cox v Cox*, 20 AD3d 527, 528 [2005]). The fact that being able to claim both children as deductions would allow for more financial aid is not a change in circumstances because this fact was in existence and readily ascertainable when the agreement was made, in which she agreed as part of a multifaceted arrangement to bear all college expenses. While Vatoria's decision to attend the college a year earlier may be considered a minor change in circumstances, considering that the mother agreed to bear all college costs and that college attendance by both children was anticipated, no substantial change justified modification of the terms agreed to by the parties.

Cardona, P.J., Peters, Lahtinen and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted respondent's motion to terminate child support as to Vatoria; said motion denied to that extent and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.