Kavanagh, J.
Appeal from an order of the Family Court of Albany County (Walsh, J.), entered January 16, 2007, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 4, for modification of a prior child support order.
In 1993, the parties were divorced and petitioner (hereinafter the father) was granted custody of their two daughters (born in 1986 and 1988). A child support order was issued and later amended several times, which required respondent (hereinafter the mother) to pay the father child support. In December 2005, the father filed a petition to modify the support order to include a provision directing the mother to contribute to the payment of their children’s college expenses. The mother filed a motion seeking the recusal of the Support Magistrate from the proceeding based upon the Support Magistrate’s prior involvement with the parties.[1] The Support Magistrate denied the mother’s motion and, after a hearing on the petition, issued findings of fact and an order requiring the mother to contribute to the payment of college expenses for the children, as well as an award of counsel fees to the father. The mother filed objections to the Support Magistrate’s determinations. Family Court upheld the findings and denied the mother’s objections. The mother now appeals.
In this appeal, the mother raises three issues. First, she argues that the Support Magistrate erred by refusing to allow her to call the parties’ two children as witnesses at the hearing. Second, she argues that it was unjust and inappropriate to require her to pay any of the college expenses incurred on behalf of the children. Finally, the mother claims that the Support Magistrate was biased and should have recused herself from this proceeding. We disagree with the mother’s position on each of these issues and affirm Family Court’s order.
First, we find no error in the Support Magistrate’s decision denying the mother’s application to call her daughters as witnesses. In her offer of proof made in support of this request, the *1084 mother claimed that the children’s testimony was relevant to establish that (1) the father had purposely engaged in conduct designed to alienate the children from her, (2) the children had voluntarily chosen to abandon the mother and terminate any contact they might otherwise have had with her, (3) the mother was not permitted to have any input or in any way participate in the children’s college selection process, and (4) the children were emancipated or, alternatively, had sufficient income at their disposal to contribute towards the payment of their college expenses.
Initially, we note that the mother has offered no testimony, including her own, in support of her contention that the father deliberately interfered with her efforts to visit with the children or that the children voluntarily decided to end any relationship they might otherwise have had with her. Absent some competent evidence to support either of these claims, and taking into account the potential impact on each child that would almost certainly result from their having to testify at this proceeding, it cannot be said that the Support Magistrate abused her discretion in denying the mother’s request that each child be compelled to testify (see Matter of Imman H., 49 AD3d 879, 880 [2008]).
As for the mother’s claim that she was excluded from the college selection process, the father concedes that she was not consulted, but explains that this was only after the mother had, for an extended period of time, shown no interest in either child and, when asked about these expenses, had stated that she would not contribute toward the expenses and was not to be contacted in the future about them. In short, there is no doubt but that the mother was not involved in this process, and the children’s testimony on this issue would have added nothing that was not already established in the record. As for the mother’s suggestion that the children had access to income that could be used for the payment of these expenses, not only did the mother fail to present any evidence to support this contention, but the father’s testimony that he paid all of these expenses is essentially uncontroverted (see Matter of Imman H., 49 AD3d at 879).
Next, we address the mother’s claim that she should not be required to contribute to the college expenses. While it is clear that the parties never entered into an express agreement to share the payment of these expenses, such an expectation can be found to exist if, “having regard for the circumstances of the case and of the respective parties and in the best interests of the child, and as justice requires, [a college] education for the *1085 child is appropriate” (Family Ct Act § 413 [1] [c] [7]; accord Matter of Naylor v Galster, 48 AD3d 951, 952 [2008]). The factors to be considered include “the child[ren’s] academic ability, the parents’ educational background and the ability to pay” (id. at 953; Brough v Brough, 285 AD2d 913, 917 [2001]; Matter of Haessly v Haessly, 203 AD2d 700, 701-702 [1994]). Here, early in the marriage, the parties established a college fund for each child and, at that time, it was the family’s expectation that the children would attend college. However, the mother claims that circumstances have changed, and she does not now have at her disposal the financial resources to make such a contribution and, further, that given the strained relationship she has with each child, no such obligation should be found to exist.
As for the mother’s ability to pay, the Support Magistrate appropriately considered the disparity in the parties’ income, and allocated the lion’s share of the total cost of this expense to the father. The mother’s total obligation for the payment of these expenses was capped at $5,000—far less than the $23,000 yearly tuition that is presently being incurred by the father for the eldest child. Moreover, given the mother’s failure to present any competent evidence that she is financially unable to contribute to the payment of these expenses, such an award is both appropriate and just (see Matter of Naylor v Galster, 48 AD3d at 952).[2]
The mother contends that even if it is found that such an obligation does indeed exist, it has been negated by the father’s ongoing efforts to alienate the children from her, as well as by the children’s adamant refusal to have anything to do with her (see id.). We recognize that a parent may seek a suspension of an obligation to support a child “where ‘the custodial parent has unjustifiably frustrated the noncustodial parent’s right of reasonable access’ ” (Labanowski v Lahanowski, 49 AD3d 1051, 1054 [2008], quoting Matter of Smith v Bombard, 294 AD2d 673, 675 [2002], lv denied 98 NY2d 609 [2002]; see Matter of Wiegert v Wiegert, 267 AD2d 620, 621 [1999]). In addition, “ ‘a child of employable age, who actively abandons the noncustodial parent by refusing all contact and visitation, without cause, may be deemed to have forfeited his or her right to support’ ” *1086 (Labanowski v Labanowski, 4 AD3d 690, 695 [2004], quoting Matter of Chamberlin v Chamberlin, 240 AD2d 908, 909 [1997]). However, to prevail on this issue, the mother must establish that her children’s refusal to have any contact with her is totally unjustified (see Labanowski v Labanowski, 49 AD3d at 1054).
Here, the evidence did not establish that the father interfered with the mother’s efforts to maintain contact with the children or that the children abandoned her. In July 1999, after the father was awarded custody of the children, the mother’s visitation was suspended only after she filed an application to “rescind” any right or obligation to visit with the children. This suspension order was issued without prejudice yet, in the six years that have passed since its entry, the mother has made no attempt, legal or otherwise, to visit with the children and, until recently, has had little contact with them. Under the circumstances, the mother’s own conduct has played a significant, if not determinative, role in the alienation of her children’s affections and cannot now be used to negate a parental obligation that otherwise exists, requiring her to assist in the payment of their college education.
Finally, the mother failed to file a specific objection to the Support Magistrate’s refusal to recuse herself from presiding over this proceeding and, therefore, this issue was not properly preserved (see Family Ct Act § 439 [e]; Matter of Renee XX. v John ZZ., 51 AD3d 1090, 1092 [2008]; Matter of Constance NN., 47 AD3d 986, 986 [2008]).
Mercure, J.E, Peters, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is affirmed, without costs.

. The Support Magistrate had worked as the law clerk for a Family Court judge who had presided over prior proceedings involving the parties.

. While she has her own income, the mother has provided little insight into her own financial circumstances, alleging that her current husband has full control over their finances and that she is not involved in them. In her original net worth statement, the mother declared that she has no monthly expenses, yet then revised that statement, without any explanation, to claim that she has $2,000 in monthly expenses. Moreover, the mother characterized her ongoing payment of child support as having “already prepaid” their college expenses and claimed that the father owed her a “big time credit back.”