■ In the Matter of PAUL P. BOCCALINO, Appellant, v ROS-SANA C. BOCCALINO, Respondent. [875 NYS2d 598]—

Peters, J. Appeal from an order of the Family Court of Delaware County (Becker, J.), entered October 16, 2007, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 4, for modification of a prior support order.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) were divorced in March 2000. Pursuant to a stipulation of settlement that was incorporated, but not merged, into the judgment of divorce, they agreed to share joint legal custody of their daughter (born in 1989), with the mother having primary physical custody in Florida and the father receiving extensive visitation in Florida, as well as limited visitation in New York. The agreement also provided that the father pay child support in the amount of $817 per month. In September

2006, upon the father's objection to a cost of living adjustment to the support order, his child support obligation was reduced to $772 a month. Thereafter, he commenced this proceeding seeking to terminate his support obligation on the grounds that the child abandoned him and the mother unjustifiably denied him access to and contact with the child. Following a hearing, Family Court dismissed the petition. The father appeals and we affirm.

Generally, a parent has a statutory obligation to support his or her child until the child reaches the age of 21 (*see* Family Ct Act § 413 [1] [a]). However, child support payments may be suspended "where the noncustodial parent establishes that his or her right of reasonable access to the child has been unjustifiably frustrated by the custodial parent" (*Matter of Crouse v Crouse*, 53 AD3d 750, 751 [2008]; *see Labanowski v Labanowski*, 49 AD3d 1051, 1054 [2008]; *Matter of Smith v Bombard*, 294 AD2d 673, 675 [2002], *lv denied* 98 NY2d 609 [2002]). On the record before us, we find that the father failed to sustain his burden of demonstrating that the mother interfered with his efforts to maintain contact with his daughter or promoted the alienation of the father from the child.

The evidence at the hearing established that there was very little contact between the father and his daughter from 2000 until 2006. The mother testified that she encouraged the child to respond to the father's letters and return his telephone calls, but was unsure if the child ever did so respond to the father. Despite the father's assertions to the contrary, the mother denied encouraging the child to refer to him as "Paul" rather than "Dad," and the father's allegation that the mother attempted to change the child's last name on school and medical records is contrary to the evidence. The credible evidence did establish that the mother traveled to New York in 2005 without providing the father an opportunity for visitation. While the mother could have done more to assure meaningful contact between the child and the father, the record as a whole does not support the conclusion that she "intentionally orchestrated and encouraged the estrangement of [the father] from the child[ ] or that she actively interfered with or deliberately frustrated his visitation rights" (*Matter of Crouse v Crouse*, 53 AD3d at 752 [internal quotation marks and citations omitted]; *see Foster v Daigle*, 25 AD3d 1002, 1004 [2006], *lv dismissed* 6 NY3d 890 [2006]).

Nor does the record support a finding that the child abandoned the father. While it is well settled that " 'a child of employable age, who actively abandons the noncustodial parent

by refusing all contact and visitation, without cause, may be deemed to have forfeited his or her right to support' " (*Labanowski v Labanowski*, 49 AD3d at 1053, quoting *Matter of Chamberlin v Chamberlin*, 240 AD2d 908, 909 [1997]), "where it is the parent who causes a breakdown in communication with his [or her] child, or has made no serious effort to contact the child and exercise his [or her] visitation rights, the child will not be deemed to have abandoned the parent" (*Matter of Alice C. v Bernard G.C.*, 193 AD2d 97, 109 [1993]; *see Matter of Ogborn v Hilts*, 269 AD2d 679, 680 [2000]). By his own admission, at no point following the parties' divorce did the father exercise his right to visitation as provided for in the stipulation of settlement by either visiting his daughter in Florida or offering to transport her to New York (*compare Matter of Chamberlin v Chamberlin*, 240 AD2d at 910). Nor can the father's sporadic telephone calls and the handful of letters he wrote to the child between 2000 and 2007 be construed as serious attempts to establish contact with his daughter (*see Radin v Radin*, 209 AD2d 396, 396 [1994]; *Matter of Wikoff v Whitney*, 179 AD2d 924, 926 [1992]). Moreover, he failed to initiate a court proceeding to enforce his visitation rights (*see Matter of Juneau v Morzillo*, 56 AD3d 1082, 1086 [2008]; *Matter of Crouse v Crouse*, 53 AD3d at 752). According great weight to Family Court's credibility assessments (*see Matter of Kinney v Simonds*, 276 AD2d 882, 883-884 [2000]; *Matter of Ogborn v Hilts*, 269 AD2d at 680), we discern no basis to disturb its conclusion that the father's own conduct caused or contributed to the breakdown in communication and visitation with his daughter.

The father's remaining contentions, including his argument that certain evidentiary rulings made by Family Court were improper, have been considered and found unavailing.

Cardona, P.J., Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, without costs.