■ In the Matter of DAVID DOBIES, Respondent, v ALENE BREFKA, Appellant. PATRICIA COUNTRYMAN, as Attorney for the Children, Appellant. (And Another Related Proceeding.) [921 NYS2d 349]—

Egan Jr., J. Appeal from an order of the Family Court of Schenectady County (Powers, J.), entered April 20, 2010, which, among other things, partially granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, to, among other things, modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of two children, Jaclyn (born in 1993) and Nikolas (born in 1995). Underlying this case is a history of acrimonious relations between the parties, resulting in more than a decade of litigation between them and members of the mother's family (*see Dobies v Brefka*, 45 AD3d 999 [2007]; *Dobies v Brefka*, 273 AD2d 776 [2000], *lv dismissed* 95 NY2d 931 [2000]; *Matter of Brefka v Dobies*, 271 AD2d 876 [2000], *lv denied* 95 NY2d 759 [2000]; *Dobies v Brefka*, 263 AD2d 721 [1999]). In 1999, the parties entered into a stipulation, which was incorporated into an order, whereby it was agreed, among other things, that the mother have sole custody of the children and that the father have certain parenting time. Thereafter, in 2004, the father filed both a violation petition and petition seeking sole custody of the children, alleging that the mother had engaged in an intentional campaign of parental alienation against him. In November 2004, Family Court granted the father's violation petition, ordered that the mother continue to have sole custody of the children, but increased the father's parenting time. In its determination, Family Court expressed its "grave concerns" with the mother's behavior, noting that it would reconsider its decision if she continued to interfere with the father's relationship with the children.[1]

In September 2008, the father commenced the first of these

---

[1]. In 2007, the father sought modification of the 1999 and 2004 orders and alleged that the mother had willfully violated those court orders. As a result, in March 2008, the parties stipulated to an order continuing the provisions of

proceedings, seeking, among other things, an order granting him sole custody of the children and terminating his child support obligations. In October 2008, the father commenced the second of these proceedings alleging that the mother had intentionally violated the 2004 and 2008 custody orders. After fact-finding and *Lincoln* hearings, Family Court granted the father sole physical and legal custody of Nikolas, terminated the father's child support obligations for Jaclyn, suspended the father's child support obligations for Nikolas and sentenced the mother to 60 days in jail for willfully violating the prior orders.[2] Family Court denied that part of the father's application seeking custody of Jaclyn, finding that her relationship with the father was irreparable. The mother and the attorney for the children now both appeal.[3]

Initially, we are not persuaded that Family Court erred in finding that the father established the requisite change in circumstances. To effectuate a modification of a prior custody order, the father must establish "a change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Robert SS. v Ashley TT.*, 75 AD3d 780, 781 [2010] [internal quotation marks and citations omitted]; *see Matter of Paul T. v Ann-Marie T.*, 75 AD3d 788, 789 [2010], *lv denied* 15 NY3d 713 [2010]; *Matter of Henderson v MacCarrick*, 74 AD3d 1437, 1439 [2010]). The 1999 custody order granted the father parenting time every other weekend, for three weeks during the summer, from Wednesday through Sunday of Thanksgiving week in odd numbered years, on Father's Day, on the father's birthday (November 6), and from December 27 through December 29. The 2004 custody order expanded the father's alternate weekend parenting time through Monday when there is no school because of a holiday and awarded him additional parenting time during winter and spring recesses, for one week after Christmas and for five weeks during the summer. The father claimed that a sufficient change in circumstance had occurred since entry of these prior orders based on, among other things, the mother's deliberate attempts to influence and disrupt the father's parenting time with the children.

At the hearing of this matter, the father testified that he has not had any visitation with Jaclyn since March 2007 and has

the 2004 order, but which slightly modified the father's March and April 2008 parenting time.

2. The 60-day sentence was stayed pending the transfer of physical custody of Nikolas to the father.

3. In June 2010, this Court granted a stay of Family Court's order.

had no weekend parenting time with Nikolas between August 2008 and March 2009.[4] The father recounted multiple examples of alienating behavior engaged in by the mother, including in the spring of 2007 when the mother refused to let Nikolas participate in visitation with the father because of inclement weather—despite the fact that both parties had already driven to the custody exchange point. The father also testified that, in 2007, the mother told Jaclyn that she did not have to participate in the spring break visit with the father. The father further testified that on two occasions—in April 2007 and at the commencement of Father's Day weekend in June 2007—when Jaclyn refused to participate in visitation with the father, the mother indicated that there was nothing she could do about it and that Jaclyn had a mind of her own. The father also testified that during an attempted exchange occurring in the summer of 2007 at a restaurant parking lot—an exchange that never occurred—the mother refused to transfer Nikolas' suitcase to the father's car and then laughed at the father and took a photograph of him with her cell phone while she walked inside the restaurant with the children.

The mother did not dispute that the relationship between the father and the children has deteriorated to the point that the children have refused visitation with him, but she attributed this to the actions of the father—claiming he was dishonest, that he called the children names and that he used physical force to discipline the children. While she testified that it was "very important" for Nikolas to have a relationship with his father and asserted that she has encouraged such visitation, the mother could not identify one instance when she disciplined Nikolas for refusing to visit the father or for misbehaving while visiting. The mother also testified that she felt that the father was a "pathological liar" and, in essence, that she accepted Nikolas' version of events whenever the father accused Nikolas of misbehaving. Family Court found the mother's explanations for her conduct insufficient and her "credibility to be seriously impaired and her testimony contradictory throughout the trial, particularly when she denied actively discouraging the children from having a relationship with their father." According deference to Family Court's credibility determinations, we find that there is sufficient evidence in the record supporting the court's conclusion that the mother interfered in the father's relationship with the children, such that the father established the requisite change in circumstances (see Matter of Arieda v Arieda-

---

4. During the fact-finding hearing, the father had several overnight visitations with Nikolas.

*Walek*, 74 AD3d 1432, 1434 [2010]; *Matter of Sloand v Sloand*, 30 AD3d 784, 786 [2006]; *Matter of Knapp v Knapp*, 296 AD2d 604, 605 [2002]).

Having so determined, Family Court was then required to conduct a best interest analysis, considering factors such as "maintaining stability in the child's life, the wishes of the child, the quality of the home environment, each parent's past performance, relative fitness and ability to guide and provide for the child's intellectual and emotional development, and the effect the award of custody to one parent would have on the child's relationship with the other" (*Matter of Troy SS. v Judy UU.*, 69 AD3d 1128, 1131 [2010], *lv dismissed and denied* 14 NY3d 912 [2010] [internal quotation marks and citation omitted]; *see Matter of Slovak v Slovak*, 77 AD3d 1089, 1091 [2010]; *Matter of Siler v Wright*, 64 AD3d 926, 928 [2009]). While a determination of the children's best interests must be based on a totality of the circumstances (*see Posporelis v Posporelis*, 41 AD3d 986, 990 [2007]), "[e]vidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the [children] is so inconsistent with the best interests of the [children] as to, per se, raise a strong probability that [the offending party] is unfit to act as custodial parent" (*Matter of Youngok Lim v Sangbom Lyi*, 299 AD2d 763, 764 [2002] [internal quotation marks and citations omitted]). Here, we conclude that the record provides a sound and substantial basis for Family Court's determination to grant the father sole legal and physical custody of Nikolas. In addition to the mother's alienating behavior, other factors support Family Court's conclusion, including that, despite evidence of Nikolas' recent obsessive compulsive tendencies, his falling school grades, his continued bed-wetting and that his behavior and reactions are at the level of a four or five-year-old, the mother testified that Nikolas' behavior was that of a normal teenager. Furthermore, while the mother testified that she wanted to work with Nikolas' psychologist—Zvi Klopott—to strengthen the child's relationship with his father, she refused to read Klopott's reports because they painted her in a negative light. Notably, the mother has not actively sought counseling for herself, notwithstanding that Family Court's 2004 order recommended that she do so. The mother also testified that she was unaware of that part of Family Court's 2004 order that found that she was interfering in the relationship between the father and the children.

While Marvin Fine, a psychologist who treated the children from 2003 to 2008, testified that it would be "devastating" to remove Nikolas from the mother's custody, Family Court found

that his testimony was of "limited utility" because, among other things, he was unaware of a prior psychologist's report opining that the mother had alienated the children from the father and because he failed to focus on the issue of parental alienation in therapy. Klopott, who treated Nikolas commencing in 2008, testified that removing Nikolas from his mother's custody might be necessary to preserve his relationship with the father, and that although Nikolas would be initially "devastated," he would slowly accept the change. While Klopott did not recommend a change in custody, we note that his recommendation, while relevant, is not determinative (*see Matter of Bates v Bates,* 290 AD2d 732, 733 [2002]). Family Court acknowledged the father's own shortcomings, including, among others, his use of physical discipline, his exercise of poor judgment in 2007 when, while driving with Nikolas, the father picked up a hitchhiker, and incidents when the father has engaged in name-calling and has ridiculed Nikolas in the presence of strangers. However, Family Court found that these deficiencies may be addressed with continued therapy. Viewing the totality of the circumstances and according deference to Family Court's credibility assessments, we find ample support in the record for Family Court's determination that it is in Nikolas' best interests for the father to have sole legal and physical custody of him (*see Matter of Opalka v Skinner,* 81 AD3d 1005, 1007-1008 [2011]).

We next address the mother's argument that Family Court erred in terminating the father's child support obligation for Jaclyn and suspending the father's child support obligation for Nikolas. "Under firmly established principles, parents have a statutory duty to continually support their children until they reach 21 years of age" (*Foster v Daigle,* 25 AD3d 1002, 1004 [2006], *lv dismissed* 6 NY3d 890 [2006] [citations omitted]; *see* Family Ct Act § 413 [1] [a]). However, child support payments may be suspended " '[w]here it can be established by the noncustodial parent that the custodial parent has unjustifiably frustrated the noncustodial parent's right of reasonable access' " (*Usack v Usack,* 17 AD3d 736, 737-738 [2005], quoting *Matter of Smith v Bombard,* 294 AD2d 673, 675 [2002], *lv denied* 98 NY2d 609 [2002]). In addition, child support payments may be deemed forfeited when "a child of employable age . . . actively abandons the noncustodial parent by refusing all contact and visitation, without cause, . . . a concept sometimes referred to as the doctrine of self-emancipation" (*Labanowski v Labanowski,* 49 AD3d 1051, 1053 [2008] [internal quotation marks and citation omitted]; *see Matter of Ogborn v Hilts,* 269 AD2d 679, 680 [2000]). However, abandonment by a child who is not "of employable age" cannot be deemed to constitute

constructive emancipation (*Foster v Daigle*, 25 AD3d at 1004 [internal quotation marks omitted]).

Family Court's determination that the mother deliberately frustrated the father's relationship with Nikolas has a sound and substantial basis in the record. Accordingly, we decline to disturb Family Court's determination to suspend the father's child support obligation for Nikolas. Next, while we agree with the mother that Jaclyn, who was only 16 years of age at the time of the court's order, was unable to abandon the father so as to forfeit his support obligation and, thus, Family Court erred in terminating the father's child support obligation as to her (*see id.* at 1005; *Matter of Kershaw v Kershaw*, 268 AD2d 829, 830 [2000]; *but see Matter of Joseph M.M. v Mary Ellen C.M.*, 227 AD2d 561, 562 [1996], *appeal dismissed and lv denied* 88 NY2d 1014 [1996]), the facts clearly support a finding that the father's support obligation should also be suspended with respect to Jaclyn based on the mother's conduct in deliberately frustrating his relationship with Jaclyn (*see Matter of Kershaw v Kershaw*, 268 AD2d at 830). Accordingly, the father's support obligations with respect to Jaclyn are also suspended pending further court order upon a showing that the mother has made good faith efforts to actively encourage and restore the father's relationship with the children (*see Usack v Usack*, 17 AD3d at 740).

Turning to the mother's argument that Family Court erred in finding that she had willfully violated the terms of the 2004 and 2008 orders,[5] "[t]o sustain a finding of civil contempt based upon a violation of a court order, it is necessary to establish [by clear and convincing evidence] that a lawful court order clearly expressing an unequivocal mandate was in effect and that the person alleged to have violated that order had actual knowledge of its terms" (*Matter of Seacord v Seacord*, 81 AD3d 1101, 1102 [2011] [internal quotation marks and citations omitted]; *see Matter of Joseph YY. v Terri YY.*, 75 AD3d 863, 867 [2010]). The 1999 order, based on the parties' stipulation and continued by the 2004 order, provides that "neither the [m]other nor the [f]ather shall do anything which may estrange the other from the children." The 2008 order provides that the parties shall make every reasonable effort "to facilitate and encourage parenting time-visitations between NIKOLAS and his father." The father's violation petition is based on two incidents occurring in October 2008—the first when the mother is alleged to have picked up Nikolas early from his visitation with the father

---

5. The father's violation petition also references a September 2008 letter order, but that document is not contained in the record.

at a bowling alley, and the second when, during a church service, the mother is alleged to have "ripped" the father's camera from his hands and removed the memory card after he took a photograph of Jaclyn, who was participating in the Mass. The father testified that the mother then ran out of the church and into the parking lot, where, among other things, she complained to a nun that the father was harassing her. We find that these incidents do not allege acts that are clearly proscribed by the 2004 and 2008 custody orders (*see Aison v Hudson Riv. Black Riv. Regulating Dist.*, 54 AD3d 457, 459 [2008]; *Matter of Hoglund v Hoglund*, 234 AD2d 794, 795-796 [1996]; *compare Matter of Cobane v Cobane*, 57 AD3d 1320, 1323 [2008], *lv denied* 12 NY3d 706 [2009]) and that Family Court erred in finding that the mother willfully violated those orders.

Finally, based on Klopott's testimony that the best chance for an orderly change in custody required that Nikolas have an initial period of no contact with the mother in order to break her influence over him, we are unpersuaded that Family Court abused its discretion by ordering that she have no contact with Nikolas for the first month after custody is transferred to the father (*see Matter of Williams v Tillman*, 289 AD2d 885, 885 [2001]). The mother's remaining contentions, including that Family Court failed to conduct a *Lincoln* hearing with Jaclyn prior to terminating the father's child support obligations and challenging the sentence imposed, have been rendered academic.

Mercure, J.P., Rose and McCarthy, JJ., concur. Ordered that the order is modified, on the law and facts, without costs, by reversing so much thereof as (1) terminated petitioner's child support obligations with respect to Jaclyn, and (2) found respondent in willful violation of the 2004 and 2008 custody orders; said child support obligations are suspended pending further order of the Family Court of Schenectady County not inconsistent with this Court's decision and petitioner's violation petition dismissed; and, as so modified, affirmed.

