OPINION OF THE COURT
Michael L. Hanuszczak, J.
On March 10, 2017 counsel for the respondents filed an “Objection to Order” with respect to the Support Magistrate’s “Order of Support” which was filed and entered on February 7, 2017. An affidavit of service has been filed with the court, indicating proper service of the objection upon the petitioner. A rebuttal was filed by counsel for the petitioner on March 17, 2017. In making its determination on the objection, the court reviewed the case file and an audio recording of the support proceeding.
As background, on June 20, 2016 the petitioner filed two separate petitions seeking to establish orders directing the respondents to pay child support for their 19-year-old child who was in their care and custody. In the application to the court, the petitioner asserts the respondents have a financial obligation to provide fair and reasonable support for the child.
On January 20, 2017 the Support Magistrate conducted a trial where both respondents were represented by the same attorney. The respondent mother personally appeared with counsel and the father, having previously waived his right to be present, did not appear. The petitioner agency appeared through its counsel.
The Support Magistrate determined both respondents to be financially liable for the child and directed the respondent mother to pay $500 per month and the respondent father to pay $300 per month to the Onondaga County Department of Social Services for the support of the child. The Support Magistrate determined the amount of the respondents’ financial obligation based upon the financial disclosure affidavits of each party, the tax related documentation submitted by the parties, the costs incurred by the petitioner relative to the child’s health care as well as the child’s monthly budget of $1,138 as put forth by the petitioning agency.
During the course of the trial the respondents raised the defense of constructive emancipation and requested the court *1123 relieve them from any monetary obligation for the child. The Support Magistrate found that the respondents did not satisfy their burden of proof and found that the child did not make a conscious decision to become emancipated. It is well established that in the event a child leaves their home without justification the child’s custodian is relieved from their financial obligation to provide support. In this instance, the Support Magistrate found that the child vacating the parents’ home was the result of a “manifestation of his emotional problems” and attributable to the child’s emotional instability. The Support Magistrate further found that it appeared the child’s behavior was “attributable to his emotional instability” and there was “no evidence presented that the child was in full possession of his faculties.”
The respondents object to the Support Magistrate’s ruling that the burden of establishing constructive emancipation was not met and: (a) that despite the child’s mental health diagnosis and designation for services through the Office for People With Developmental Disabilities he has the ability and maturity to constructively abandon his parents and (b) the Support Magistrate made an independent finding without a sound or substantial basis that the child lacked the requisite comprehension to make a conscious decision to vacate the parents’ residence.
It is a matter of fundamental policy that the parents of an unemancipated child are responsible to financially support that child. (Matter of Gold v Fisher, 59 AD3d 443 [2009].) Furthermore, Family Court Act § 413 (1) (a) states that “the parents of a child under the age of twenty-one years are chargeable with the support of such child and . . . shall be required to pay for child support a fair and reasonable sum.” However, a child who is otherwise unemancipated and with the requisite ability may constructively emancipate themselves if they withdraw themselves from parental control and supervision without just cause. (Matter of Ontario County Dept. of Social Servs. v Gail K., 269 AD2d 847 [2000].) The burden of proof rests upon the party asserting the affirmative defense of constructive emancipation. (Schulman v Schulman, 101 AD3d 1098 [2012].)
Furthermore, the doctrine of constructive emancipation includes a child of employable age who abandons the noncustodial parent by refusing all contact; however, “[a] child’s reluctance to see a parent is not abandonment” thereby, relieving the parent of their support obligation (Radin v Radin, 209 *1124 AD2d 396, 396 [1994]). Decisional case law has also held that “where it is the parent who causes [the] breakdown in communication with the child” then the child shall not be deemed to have abandoned the parent. (Matter of Barlow v Barlow, 112 AD3d 817, 818 [2013]; Melgar v Melgar, 132 AD3d 1293 [2015].) Parental acts or omissions such as neglect, malfeasance, or a child’s justifiable refusal to maintain contact with a parent shall not be considered constructive emancipation. (Labanowski v Labanowski, 49 AD3d 1051 [2008].)
The Support Magistrate correctly found that the child’s behavior was a manifestation of his emotional issues and that no evidence was presented by either respondent that the child possessed the requisite ability to become self-emancipated. (Matter of Roe v Doe, 29 NY2d 188 [1971].) The Support Magistrate’s findings were soundly based upon the credible testimony of the child’s Medicaid service coordinator (hereinafter referred to as coordinator). The coordinator testified that the child suffers from a mild intellectual disability along with cognitive impairment and therefore lacks the ability to complete common tasks and is unable to reside independently.
The coordinator further stated that the child, who receives services through the Office for People With Developmental Disabilities, was treated in a “harsh” manner in the respondents’ residence and told her that he felt unsafe at the residence. The coordinator also testified that upon the child being admitted to the St. Joseph’s Comprehensive Psychiatric Emergency Program a discharge plan was developed for him to be released on a temporary basis to a homeless shelter for youth. Subsequent to his admission, an appropriate long-term individualized residential alternative home was selected which is where the child was residing at the time of the hearing.
The court notes that the respondent mother’s testimony was consistent and validated the child’s inability to consciously emancipate himself. The mother referenced the various diagnoses made by the child’s treating physician which include: fetal alcohol syndrome, intellectual disability, and attention deficit disorder. The respondent mother also stated that the child’s application for Medicaid was granted based upon a neurological impairment.
Based upon the testimony and the evidence received at the underlying hearing the court finds that the Support Magistrate correctly found the child’s decision to leave the respondents’ residence was not a conscious decision. No evidence was pre *1125 sented by either respondent that despite the child’s various diagnoses and intellectual disability that he possessed the requisite cognitive ability to make a conscious decision to become emancipated. (Melgar v Melgar, 132 AD3d 1293 [2015].) The court further finds the child was justified in not returning to the respondents’ home and therefore his conduct will not be considered self-emancipating. (Schulman v Schulman, 101 AD3d 1098.)
It is the responsibility of each party to bring forth all of his or her evidence at the time of the hearing and additional evidence will not be entertained during the objection process. (Matter of Lahrs v Lahrs, 158 AD2d 944 [1990].) Therefore, the court will not address the child’s lack of participation as a witness in the proceeding before the Support Magistrate as raised by the respondents in their objection.
Finally, it is well-settled that the decision of a support magistrate is afforded great deference on appeal; in part, because the support magistrate is the trier of fact who saw and heard the witnesses at trial. (Matter of Coniglio v Coniglio, 295 AD2d 509 [2002].) Unless there is a clear abuse of discretion, a court will not disturb the underlying determination. (Matter of Gayle v Counts, 302 AD2d 521 [2003].)
Accordingly, the respondents’ objection is hereby denied.