■ In the Matter of the Guardianship of MIGUEL S., and Others, Infants. PUERTO RICAN ASSOCIATION FOR COMMUNITY AFFAIRS, INC., Appellant, v MIGUEL S., Respondent.

Miguel and Lisa S. came into petitioner's care in February

1984. An abuse proceeding commenced in Kings County Family Court against respondent and the children's natural mother determined that Miguel was an abused child and his sister was at risk of being abused. In July 1983, Miguel, who was not yet three years old, was admitted to Long Island College Hospital with second and third degree burns on both feet, hands and legs in addition to bruises on his ear, back and penis. Hospital X rays revealed three previous fractures of the boy's tibia, femur and shoulder. The evidence presented to the Kings County Family Court established "not merely by a preponderance of the credible evidence but beyond a reasonable doubt" that these physical injuries were not caused by accidental means. Following a court-ordered investigation and report by Special Services for Children, which indicated that respondent "may have an alcoholic problem and is not willing to recognize this and get help," the parents consented to placement of the children for 18 months.

The children's natural mother voluntarily relinquished her parental rights in October 1985. In August 1986, petitioner commenced this proceeding in New York County Family Court to terminate respondent's parental rights and to free the two children for adoption. Despite the fact that the Kings County Family Court records were directly relevant and highly material to the termination proceeding, those records were not presented to the court which dismissed the petition for failure to establish a prima facie case. Petitioner's presentation suffered from several defects, not least of which was the fact that the caseworker called as petitioner's only witness had assumed responsibility for the case just one month before the petition was filed and had no personal knowledge of the prior history of the case. Nevertheless, we find that the agency's progress notes which were admitted in evidence established, prima facie, that the children were permanently neglected within the meaning of Social Services Law § 384-b (7).

The comprehensive progress notes maintained by petitioner's caseworkers, covering the period from February 1984 through June 1986, were received in evidence over respondent's objection. Although respondent's counsel apparently had an opportunity to review the progress notes, he did not do so because he had not been notified of petitioner's intention to offer them in evidence. While the better practice is to provide respondent with notice and an opportunity to examine the case file prior to the hearing (*Matter of Leon RR,* 48 NY2d 117, 123 [1979]), counsel did have an opportunity to examine

the file during trial and the Family Court Judge was vigilant in limiting the testimony read from the progress notes *(Matter of Rosemary D.,* 78 AD2d 889 [2d Dept 1980], *lv denied* 52 NY2d 703 [1981]). The court properly excluded entries where the source of the information was not disclosed or was under no duty to report to the agency *(Matter of Leon RR, supra,* at 122; *Rush v Sears, Roebuck & Co.,* 92 AD2d 1072, 1073 [3d Dept 1983]; *Matter of Eggleston v Richardson,* 88 AD2d 750 [4th Dept 1982]). The Family Court Judge, however, erroneously found the admissible evidence insufficient to establish a prima facie case of respondent's failure to plan for the children's future despite the agency's diligent efforts to encourage and strengthen the parental relationship.

The Family Court Judge deemed the evidence of respondent's drinking problem "insubstantial". The court rejected evidence based on the natural mother's statements "in a hostile family atmosphere that the other parent had a drinking problem". The only evidence of alcohol abuse the court found was the caseworkers' observations on at least two occasions when respondent appeared for family visits smelling of alcohol. Respondent repeatedly denied to the caseworkers that he had a drinking problem, and maintained that he was merely a "social drinker".

The court, however, overlooked evidence that during a family conference in August 1984, attended by respondent, the natural mother and two of the agency's employees, there was "a very aggressive discussion" regarding respondent's drinking and the problems it created for the family. At one point the natural mother told respondent "you are always asking for opportunities and you never change you would just change for a week or two and then you would start drinking and doing the same things over again and I am tired of that life." She also maintained that respondent's first wife had left him "because she could not stand your pattern of life, she did not put up with your drinking problems". At no time during the conference did respondent challenge her statement about his drinking problem or deny that he had one. Respondent's failure to deny or challenge these assertions, which were made in his presence when he had an opportunity to do so, and where it would be expected that he would deny them, must be deemed an admission. *(See, People v Allen,* 300 NY 222, 225 [1949]; *People v Egan,* 78 AD2d 34, 36 [4th Dept 1980]; Richardson, Evidence § 222 [Prince 10th ed].)

Moreover, after the conference ended, respondent approached the caseworker to discuss the mother's concern that

he would "adopt another personality" when he drank and her unwillingness "to live with two different men." The caseworker then added that, although he was not permitted to involve himself in marital relationships, "I must say that after you have a beer your personality changes absolutely." To this, respondent replied "I don't know what to do, I am willing to change." This tacit admission, coupled with the recorded observations that respondent had consumed alcohol prior to scheduled appointments at the agency, was certainly prima facie evidence that respondent had an alcohol problem, notwithstanding his denials.

Thus, the Family Court Judge's finding that it was "ludicrous" for the agency to insist that respondent undergo alcoholic rehabilitation or a medical evaluation to demonstrate that he was not an alcoholic when, according to the court, there was no evidence of an alcohol abuse problem, was plainly erroneous in light of this evidence. There was a solid basis for the agency's determination that alcoholic rehabilitation was the necessary first step for respondent and it made diligent efforts to encourage him to take it. (See, Matter of Ronald YY., 101 AD2d 895, 897 [3d Dept 1984].) Respondent, however, did not avail himself of the opportunities offered and even refused to apply for Medicaid so that he could receive such treatment free of charge.

The evidence also indicates that respondent's plan, developed after the natural mother relinquished her rights, to have his own mother assume primary care of the children was completely unrealistic. There were serious questions about the paternal grandmother's physical ability to care for the two young children. She attended only one of the scheduled visits at the agency because she was unable to travel. Although the paternal grandmother expressed an interest in planning for the future of the children, her involvement and commitment were "only marginal". The caseworker also concluded after a visit to her home that the apartment would be too cramped to accommodate two young children.

During the 30 months that the children were in petitioner's care, respondent resisted all efforts by the agency to recognize his drinking problem and take steps to resolve it. He also opposed the treatment provided by the agency to the children, refusing to consent to speech therapy for Miguel and objecting to the orthopedic shoes prescribed for Lisa. Respondent's willful refusal to utilize the services and resources offered by petitioner or to develop a realistic plan for the family is prima facie evidence of permanent neglect. (Social Services Law

§ 384-b [7] [c]; *Matter of Nathaniel T.*, 67 NY2d 838, 842 [1986].)

Inasmuch as the petition was dismissed at the close of petitioner's case and respondent has not had an opportunity to be heard, we remand the matter to the Family Court for a new hearing. Concur—Kupferman, J. P., Kassal, Rosenberger, Ellerin and Smith, JJ.