■ James E. Usack, Respondent, v Linda R. Usack, Appellant. [793 NYS2d 223]—

Spain, J. Appeal from a judgment of the Supreme Court (Relihan, Jr., J.), entered November 7, 2003 in Tompkins County, ordering, inter alia, child support and medical coverage for the parties' children, upon a decision of the court.

The parties were married for 20 years and had three children, a son born in 1983 and daughters born in 1986 and 1988. Plaintiff commenced this action for divorce in early 2002 and defendant moved out of the marital residence later that year and cross-claimed for divorce. After a nonjury trial, Supreme Court, among other things, awarded plaintiff a divorce upon the parties' stipulation, distributed their property, and granted plaintiff custody of the daughters and exclusive ownership and possession of the marital residence. The court ordered defendant to pay child support and a portion of the uninsured medical expenses for all three children.

Supreme Court issued a detailed written decision containing extensive findings of fact which accurately portrays the tragedy often visited upon children—even teenage children—who have been manipulated into parental estrangement. The court denied defendant's request that she be relieved, permanently or temporarily, of her child support obligations. That request was based upon, among other grounds, plaintiff's near complete frustration of any relationship, communication or contact between defendant and her children since December 2001, when plaintiff first learned of and told the children about defendant's relationship with another man. The court found that "plaintiff and [the] children have rejected every effort of defendant to demonstrate her continued devotion to her offspring with a vehemence which is remarkable for its undiminished intensity over a protracted period which still continues." The court also concluded that plaintiff had "encouraged" the children's "unbridled enmity" toward and "total exclu[sion]" of their mother through "a course of conduct calculated to inflict the most grievous emotional injury upon her." The court ultimately determined that there was insufficient circumstantial or professional evidence to attribute the children's uniform attitudes and behavior to plaintiff.

Defendant now appeals, contending that her child support obligation should have been suspended due to plaintiff's deliberate actions in alienating their children from her, a conclusion we find inescapable on this record and from Supreme Court's findings of fact, which we adopt.

A parent, of course, has a statutory duty to support a child until the age of 21 (*see* Family Ct Act § 413 [1] [a]). However, "[w]here it can be established by the noncustodial parent that

the custodial parent has unjustifiably frustrated the noncustodial parent's right of reasonable access, child support payments may be suspended" (*Matter of Smith v Bombard*, 294 AD2d 673, 675 [2002], *lv denied* 98 NY2d 609 [2002]; *Matter of Kershaw v Kershaw*, 268 AD2d 829, 830 [2000]; *Weinreich v Weinreich*, 184 AD2d 505, 506 [1992]).

At the hearing held in August 2003, the children, then ages 18, 16 and 14, were, unfortunately, not available to testify or to be interviewed in camera; apparently at least one was outside the country. The Law Guardian expressed to Supreme Court the children's wishes to remain with their father and control their own contact with their mother.\* Plaintiff testified that while the marriage began to experience difficulties in early 2001, the family was "perfectly happy" and defendant enjoyed a close relationship with the children and was very involved in all of their activities until he revealed defendant's affair to them in December 2001. He claimed that, after that discovery, they unilaterally chose to completely ostracize defendant and reject all of her repeated efforts to communicate, to attend their sporting activities or to have any meaningful contact or relationship with her, although she continued to live in the family home. This ostracism and estrangement of defendant from the family continued for nine months, unabated, until September 2002, when defendant finally moved out, and it continued until the time of the trial. Plaintiff, whose credibility Supreme Court found to be "seriously impaired," denied actively discouraging or preventing the children's relationship with defendant. He did not address many of the specific incidents to which defendant thereafter testified, and failed to demonstrate any meaningful efforts on his part to facilitate the children's continued relationship with their mother.

The testimony of defendant, credited by Supreme Court and much of it unrefuted, detailed plaintiff's callous and insensitive conduct toward defendant prior to December 2001, which the court recognized as the probable inducement for defendant's affair. She also described plaintiff's relentless actions—following the discovery of her affair—in excluding defendant from the family entirely, vehemently rejecting any efforts on her part to have a meaningful relationship with her children or to continue

---

\* We again emphasize that it is not proper for a law guardian to make a "report" to a court. Here, the Law Guardian submitted—at Supreme Court's direction—a report containing her own unsworn observations regarding the parties, recounting personal interactions or opinions about them, all of which, we note, could have been explored and elicited by calling witnesses and upon cross-examination of the parties and other witnesses (*see Weiglhofer v Weiglhofer*, 1 AD3d 786, 788 n [2003]).

any parental role and involvement. Her testimony established that plaintiff, among other things, often yelled at her to leave, disparaged her, locked her out, and told the children that defendant did not want to be—and was no longer—part of their family because she had chosen someone else. Plaintiff also used his immediate family members to care for the children and shield them from interaction with defendant at home in his absence and he did nothing to dissuade the children's public humiliation of defendant.

By his example, his actions and his inaction, plaintiff orchestrated and encouraged the estrangement of defendant from the children. He exploited their unhappiness toward her over the affair and the break-up of the family and manipulated their loyalty to him—and the exclusion of defendant—to punish her for her rejection of him. As Supreme Court noted in reducing defendant's child support arrears, the treatment of defendant was "needlessly vindictive" and, we find, a clear violation of plaintiff's responsibility "to assure meaningful contact between the children and the other parent" (*Matter of Raybin v Raybin*, 205 AD2d 918, 921 [1994]). Indeed, plaintiff utterly failed in his duty to rise above his anger at defendant to affirmatively encourage the children to have contact and a relationship with their mother. Instead, he chose to foster their aversion to and exclusion of her at a time when they were hurt and vulnerable and to deprive them of the undeniable benefit and right of having two loving, supportive parents; he also denied defendant her right to a normal relationship with them (*see Labanowski v Labanowski*, 4 AD3d 690, 694 [2004]). Most importantly, plaintiff never—at any time—suggested that defendant had been other than a dedicated, eager, involved, loving, willing and hard working mother who genuinely pursued a continued role in the lives of her children. Clearly, defendant's decision to engage in and pursue an extramarital affair while continuing to reside with plaintiff and the children resulted in turmoil in the children's lives. However, plaintiff did not demonstrate that defendant exposed the children to anything related to that affair or, apart from her infidelity, mistreated him in any other way.

Thus, we find that defendant amply met her burden of demonstrating that plaintiff deliberately frustrated her relationship and visitation with the children. While alteration of defendant's child support obligations may be an imperfect remedy with which to address plaintiff's harmful, unfair conduct, there is no proof that suspending defendant's obligations temporarily would result in the children becoming public charges. Accordingly,

defendant's support obligations are suspended pending further court order upon a showing that plaintiff has made good faith efforts to actively encourage and restore defendant's relationship with the children, and defendant's visitation with the children (*see Matter of Kershaw v Kershaw*, 268 AD2d 829, 830 [2000]).

Because Supreme Court's judgment has transferred "any future matters relating to custody or child support" to Family Court, these proceedings should be remitted directly to the Family Court of Tompkins County.

Mercure, J.P., Crew III, Carpinello and Kane, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as ordered defendant to pay child support; said obligation suspended pending further order of the Family Court of Tompkins County, and matter remitted to said court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.