*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  November 13, 2014          516889
_____

BRIAN K. WHITAKER,
                    Appellant-
                    Respondent,
        v                              MEMORANDUM AND ORDER

CAROL L. CASE,
                    Respondent-
                    Appellant.
_____

Calendar Date:  September 5, 2014

Before:  Stein, J.P., McCarthy, Egan Jr., Lynch and Clark, JJ.

_____

        Lowell R. Siegel, Altamont, for appellant-respondent.

        Cynthia Feathers, Glens Falls, for respondent-appellant.

        Alexandra Verrigni, Rexford, attorney for the children

_____

Lynch, J.

        Cross appeals from a judgment of the Supreme Court (Powers,
J.), entered September 17, 2013 in Schenectady County, ordering,
among other things, equitable distribution of the parties'
marital property, upon a decision of the court.

        The parties were married in September 1994 and have a
daughter (born in 1995) and a son (born in 1998).  Shortly after
defendant (hereinafter the wife) left the marital residence in
April 2008, plaintiff (hereinafter the husband) commenced this
divorce action.  In the ensuing litigation, Supreme Court
initially awarded the parties joint legal custody of the
children, with the husband maintaining primary physical custody.

The court also ordered the children and the wife to engage in therapeutic counseling, directing both parties to cooperate in the process.  Following an extended bench trial that commenced in August 2010 and concluded in April 2011, Supreme Court issued an order in September 2012 which, as pertinent here, granted the parties a divorce on mutual grounds of cruel and inhuman treatment, classified and ordered the equitable distribution of the parties' marital property, granted the husband sole legal and physical custody of the children without any award of visitation to the wife, retroactively suspended the wife's obligation to pay child support, directed that certain child support payments be returned to the wife, and directed the husband to pay the wife limited costs.  A judgment of divorce was entered in September 2013 and both parties have appealed.[1]

The wife maintains that Supreme Court erred in awarding the husband two bank accounts he opened jointly, one with his daughter and the other with his son, both in the principal sum of $100,000.  "[W]hile the method of equitable distribution of marital property is properly a matter within the trial court's discretion, the initial determination of whether a particular asset is marital or separate property is a question of law" (DeJesus v DeJesus, 90 NY2d 643, 647 [1997]; see Owens v Owens, 107 AD3d 1171, 1173 [2013]; Armstrong v Armstrong, 72 AD3d 1409, 1415 [2010]).  Supreme Court determined that the husband funded each account, at least in part, with $187,000 in funds received and/or inherited from his aunt.  The bank records, however, do not sustain the court's findings as to the daughter's account.  The parties' joint SEFCU checking account statements show that $100,000 was withdrawn on December 21, 2005 by transfer number 1930.  Notably, the husband acknowledged this account was used as the parties' primary checking account.  That same day, $100,000 was deposited into a certificate of deposit in the name of the

_____

[1]  Although the husband only appealed from the September 2012 order, rather than the judgment entered in September 2013, since the order is not materially different from the judgment, we deem the appeal to have been taken from the judgment (see CPLR 5520 [c]; Bukowski v Clarkson Univ., 86 AD3d 736, 737 n [2011], affd 19 NY3d 353 [2012]).

husband and his daughter by transfer number 1930. This match verifies that marital funds were utilized to fund the joint father/daughter account. Accordingly, we find that the wife's distributive share should be increased by $50,000.[2]

As for the joint account that the husband opened with his son, the SEFCU statements show that, on December 21, 2005, the husband withdrew $100,000 from an account titled in his name "as settlor" by transfer number 1550. That same day, by transfer number 1550, $100,000 was placed in a certificate of deposit in the husband's name, jointly with his son. This match identifies the settlor account as the source of funds for the joint account. Separate property includes funds received by gift or inheritance (see Domestic Relations Law § 236 [B] [1] [d] [1]). The husband testified that he funded the settlor account entirely with cash received and inherited from his aunt, which he initially stored in a security box at home. Notably, the wife does not dispute the fact that the husband placed funds received from his aunt in a security box, but maintains that since she had a key, the funds were transformed into marital property. This contention is not convincing. On the record presented, we decline to disturb Supreme Court's classification of this joint account as the husband's separate property.[3] The record also supports Supreme Court's classification of various savings bonds as the husband's separate property, purchased with funds received from his aunt.

Next, the wife contends that Supreme Court erred in classifying as marital property a $100,000 payment that she received in 2003 after settling an employment discrimination claim. Compensation received for personal injuries constitutes separate property for purposes of equitable distribution (see

_____

[2] On November 21, 2008, the $100,000 was transferred into a different joint account in the name of the husband and the daughter from which a check in the amount of $25,000 was paid to the husband's former attorney and an additional $5,000 was withdrawn.

[3] This account was closed on October 5, 2009 with a check in the amount of $100,025.25 issued to the husband.

Domestic Relations Law § 236 [B] [1] [d] [2]).  By its terms, the settlement agreement resolved the wife's claim of employment discrimination without an admission of liability, specified that no damages were being paid for any prior or future wage loss claim and provided for the payment of her counsel fees.  All things being equal, this fund would constitute the wife's separate property.  The record shows, however, that after initially depositing the proceeds into an individual account on July 30, 2003, the wife created a joint account with the husband on August 18, 2003.  Thereafter, the husband withdrew the accrued interest on the account.  Although the wife testified that the husband threatened to harm her unless she added his name to the account, Supreme Court discredited this explanation and found that she transmuted the funds into marital property through the joint account.  We defer to the court's credibility assessment.  The transfer of separate property, as here, into a joint bank account raises a presumption that the funds are marital (see Schwalb v Schwalb, 50 AD3d 1206, 1209 [2008]; Judson v Judson, 255 AD2d 656, 657 [1998]).

The analysis, however, must proceed further given the separate property source and the use of this account.  With limited exception, the principal in the account remained intact until 2008 when, with Supreme Court's approval, the wife utilized the $100,000 balance to construct a home on a 6.4-acre lot on Pryne Road in the Town of Glen, Montgomery County.  Up to that point, the husband routinely withdrew the accrued interest to maintain the $100,000 balance.  As an exception, the SEFCU account statements support the wife's contention that the Pryne Road lot was purchased in 2004 with $13,000 in funds taken from the account.  An adjacent lot was also purchased, which remains vacant.  The wife explained that she utilized her workers' compensation disability payments, which arose out of a 1996 automobile accident, to replenish the balance back to $100,000.  On this record, it is evident that the account was funded entirely with the wife's separate property.

Since the two lots were purchased during the marriage, they are presumed to be marital property (see Domestic Relations Law § 236 [B] [1] [c]; Halse v Halse, 93 AD3d 1003, 1005 n 1 [2012]).  Supreme Court did not abuse its discretion in rejecting the

parties' respective claims that separate property was utilized to purchase the vacant lot. We find that the court properly treated the entire property as marital property, but erred in not recognizing a credit in the wife's favor. Notwithstanding the fact that the settlement funds were placed in a joint account, those funds were not commingled with other marital assets. To the extent that principal withdrawals were made, the wife replenished the principal balance with her own separate property. Given this content, we find that the wife should have received a $100,000 credit for the purchase of the Pryne Road lot and the construction of the home (see Chernoff v Chernoff, 31 AD3d 900, 903 [2006]; Milnarik v Milnarik, 23 AD3d 960, 962-963 [2005]; Zanger v Zanger, 1 AD3d 865 [2003]; Judson v Judson, 255 AD2d at 657; compare Campfield v Campfield, 95 AD3d 1429, 1430 [2012]). Since Supreme Court awarded the husband $69,000 based on a cumulative value of $138,000 for the land and residence, we reduce the award to him to $19,000. While we recognize that the wife also secured a $20,000 loan from SEFCU and another $8,000 from relatives to complete the construction, Supreme Court duly noted that these were postcommencement loans that the court did not authorize.

For his part, the husband challenges Supreme Court's calculation of the award to the wife of an equitable share of the parties' property located at Rynex Corners Road in Pattersonville, Schenectady County. The parties stipulated that this was marital property, valued at $186,000. According the wife a $25,000 separate property credit, the court awarded the property to the husband, with a corresponding distributive award of $118,000 to the wife. Essentially, the husband maintains that the court erred in calculating the wife's share by not subtracting the credit from the total value before dividing the remainder in half. We agree, for the credit should be applied against the value of the marital asset acquired with the separate property funds (see Judson v Judson, 255 AD2d at 657). Utilizing this formula, we reduce the wife's distributive award to $105,500.

The husband also maintains that Supreme Court erred in awarding the wife a 50% equitable share of the Altamont Avenue property located in the City of Schenectady, Schenectady County.

Since the husband acquired the property in 2003, it initially qualified as his separate property (see Domestic Relations Law § 236 [B] [1] [d] [1]; Keil v Keil, 85 AD3d 1233, 1235 [2011]). He did so, however, through a $45,000 mortgage and a $10,000 loan from his parents. The wife testified that she was added to the mortgage "as soon as [she] moved in," which was prior to the marriage. Supreme Court credited her testimony that both the mortgage and the parents' loan were paid off with marital funds, as well as funds that the wife received from a workers' compensation claim, and rejected the husband's contention that the mortgage was satisfied with funds from his aunt. In deference to the court's credibility determination, we discern no abuse of discretion in its classification of this property as a marital asset (see Fields v Fields, 15 NY3d 158, 162-163 [2010]; Lurie v Lurie, 94 AD3d 1376, 1378 [2012]).

Given the absence of proof, Supreme Court aptly declined to award either party an interest in the other's pension interest. That being said, the court duly awarded the husband a Majauskas share of the wife's federal Thrift Savings Plan.

We turn next to Supreme Court's directive retroactively suspending the wife's child support obligation and refunding certain child support made, challenged by both the husband and the attorney for the children.[4] A noncustodial parent's duty to support his or her children until the age of 21 (see Family Ct Act § 413 [1] [a]) may be suspended where he or she establishes that the custodial parent "wrongfully interfered with or withheld visitation" (Matter of Luke v Luke, 90 AD3d 1179, 1182 [2011]; see Domestic Relations Law § 241; Usack v Usack, 17 AD3d 736, 737-738 [2005]). Here, Supreme Court's decision describes a household rife with animosity and overtones of domestic violence. Indeed, the protracted hostility between the parties led the court to grant a mutual divorce pursuant to Domestic Relations Law § 170 (1) because "both [were] batterers and BOTH [were] victims." After one particularly abusive event, the wife left

_____

[4] Subsequent to the filing of this appeal, the suspension of the wife's child support payments was lifted by order entered April 24, 2014.

the household and the court ordered her and the children to engage in therapeutic visitation, with the husband's assistance. Regrettably, these sessions failed and were discontinued in March 2010, and the children refused further contact with the wife. In our view, while the record shows that the wife's behavior was not above reproach, it also supports the court's finding that the husband behaved badly in both his demeanor and his efforts to promote therapeutic counseling. Notably, for example, the initial therapeutic counselor asserted that he undermined the therapeutic process, and the court-appointed psychologist went even further, describing the husband as a "parent alienator" who "brainwashed" the children against the wife. Accordingly, we find a reasoned basis in this record for Supreme Court's determination to suspend the wife's child support obligations pending the husband's demonstration of a good faith effort to assist in the therapeutic process undoubtedly needed to reunite the wife with the children. Further, there is no indication that this remedy presented any risk to the children becoming public charges (see Usack v Usack, 17 AD3d at 740).

Upon its finding of interference, Supreme Court was authorized to suspend child support payments (see Domestic Relations Law § 241; Alan D. Sheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 241 at 22-23). Here, during the pendency of her application to suspend her child support obligation, the wife paid child support directly to the husband from November 2009 through April 22, 2011. Thereafter, pursuant to an order entered May 5, 2011, the wife paid child support to the support collection unit to be held pending resolution of her interference claim. Under the circumstances presented, we perceive no abuse of discretion in the court's determination to permit the wife's child support payments to be held in escrow during the pendency of the issue (see Matter of Lew v Sobel, 91 AD3d 648, 648 [2012]). Similarly, we find that, under the circumstances, the court properly suspended her child support obligation retroactively, but only to the date the escrow fund was established (compare Matter of Luke v Luke, 90 AD3d at 1182; Matter of Alexander v Alexander, 129 AD2d 882, 884 [1987]) and directed the return of the escrowed monies to her. In contrast, we find that Supreme Court improperly adjusted the distributive award payable to the wife to

reimburse her for the child support payments that she actually made to the husband for the benefit of the children during the pendency of her application. In our view, this adjustment violated the "strong public policy against restitution or recoupment of support overpayments" (Johnson v Chapin, 12 NY3d 461, 466 [2009] [internal quotation marks and citation omitted]; see Katz v Katz, 55 AD3d 680, 683 [2008]). We see no reason to depart from that policy in this case.

Finally, given the respective financial circumstances of the parties and the dynamics of this case, Supreme Court did not abuse its discretion in declining the wife's request for counsel fees, while awarding her costs incurred as a result of the husband's misconduct (see DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). Not to be overlooked is that the court duly sanctioned the husband for his obstructive behavior.

McCarthy and Egan Jr., JJ., concur.


Stein J.P. (concurring).

While we agree with the result reached by the majority, we are compelled to voice our concerns regarding the practical effect of, and policy considerations surrounding, the retroactive suspension of a noncustodial parent's obligation to pay child support. According to the longstanding jurisprudence of this Court, in certain circumstances, such as here, in which a custodial parent interferes with the parental rights of the noncustodial parent, a court may suspend the noncustodial parent's child support obligation retroactive to the date an application for such suspension was made (see Matter of Luke v Luke, 90 AD3d 1179, 1182 [2011]; Matter of Alexander v Alexander, 129 AD2d 882, 884 [1987]; but see Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 241 at 23). While we interpret the relevant statutes as prohibiting the child support payor from unilaterally discontinuing his or her payments during the pendency of a suspension application in the absence of a court order permitting such action, we are concerned that our previous decisions — and, to a certain extent, the majority decision here — which apply a

suspension of child support retroactively, could actually promote such self-help. We, therefore, write separately to advocate for clarification and/or a modification of our precedent on this issue.

In our view, as the following examples illustrate, retroactivity of child support suspensions cannot be effectuated as a practical matter. Where a child support payor – who makes an application to suspend payments due to the custodial parent's interference with the payor's parental relationship – continues to comply with his or her child support obligation payments while the application is pending, public policy prevents recoupment of the payments made in the event the court ultimately makes a finding of parental interference warranting a suspension. A similar result occurs where the payor does not make payments during the pendency of a suspension application, in that the statute prohibits the court from canceling the accrued arrears upon a subsequent finding of interference (see Domestic Relations Law § 241; Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 241 at 23; Matter of Rivera v Echavarria, 48 AD3d 578, 578 [2008]; Ledgin v Ledgin, 36 AD3d 669, 670 [2007]; Doyle v Doyle, 198 AD2d 256, 257 [1993]; but see Matter of Alexander v Alexander, 129 AD2d at 883-884). However, in the latter situation, the noncustodial parent is temporarily relieved of his or her financial obligation, while the custodial parent is deprived of support for the children without the benefit of a judicial determination that there is at least some arguable merit to the suspension application and a consideration of the financial consequences to the parents and the children. In either event, it seems that retroactivity is but a legal concept without any practical application.

Considering the foregoing, we are of the view that a retroactive suspension of child support payments is appropriate only where, as here, the child support payor has, with court authorization, either paid child support into an escrow account or has obtained a temporary court order suspending payments during the pendency of the suspension application. In our opinion, requiring that child support payments be made in escrow is preferable, as it ensures that the noncustodial parent fulfills his or her child support obligations if the case is

ultimately decided in favor of the custodial parent, while also making certain that the financial support is readily available for court-directed withdrawals, if necessary, for the custodial parent to meet the needs of the children (see Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 241 at 23).  If, on the other hand, the noncustodial parent prevails, a subsequent suspension of child support can truly be retroactive and allow for the return of monies paid into the escrow account without violating the public policy against recoupment and without encouraging the accrual of arrears.

Clark, J., concurs.

ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) classified the joint account of plaintiff and his daughter as separate property, (2) failed to award defendant a separate property credit against the acquisition of the cumulative Pryne Road property, (3) miscalculated the separate property credit due defendant for the Rynex Road property, and (4) ordered the refund of child support overpayments; award defendant half of the value of said joint account naming plaintiff and the daughter ($50,000), award defendant a $100,000 credit for the purchase of the Pryne Road property, resulting in a reduction of plaintiff's distributive share for this asset from $69,000 to $19,000, reduce defendant's distributive share in the Rynex Road property to $105,000, and award plaintiff a refund of $25,447.85 in child support for the period of November 2009 through April 22, 2011; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court