*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    September 10, 2015          518826
_____

PAUL J. MULA,
                    Appellant-
                    Respondent,

        v                                    MEMORANDUM AND ORDER

JO-ANNE MULA,
                    Respondent-
                    Appellant.
_____

Calendar Date:   June 1, 2015

Before:   Lahtinen, J.P., Lynch, Devine and Clark, JJ.

_____

        Blatchly & Simonson, PC, New Paltz (Bruce D. Blatchly of
counsel), for appellant-respondent.

        Larkin, Ingrassia & Brown, LLP, Newburgh (Azra J. Khan of
counsel), for respondent-appellant.

_____

Clark, J.

        Cross appeal from a judgment of the Supreme Court (McGinty,
J.), entered February 12, 2014 in Ulster County, ordering, among
other things, equitable distribution of the parties' marital
property, upon a decision of the court.

        Plaintiff (hereinafter the husband) and defendant
(hereinafter the wife) were married in November 1968.  The
husband is a certified public accountant (hereinafter CPA),
earning his license in 1981, and the sole proprietor of an
accounting practice that he has owned since 1997.  During the
course of the marriage, the wife was primarily involved with the
upkeep of the parties' home and raising their three children, the

first of which was born in 1973,[1] while the husband was the primary wage earner. Over the ensuing 42 years, the parties acquired a number of assets including, in addition to the marital residence, a home on Doris Lane in Lake Katrine, Ulster County, a home on Newkirk Avenue in the City of Kingston, Ulster County, an apartment in Tudor City, New York City, and two condominiums in St. Croix.

In January 2011, the husband commenced this divorce action asserting an irretrievable breakdown of the parties' marriage. The wife joined issue with a counterclaim alleging abandonment, cruel and inhuman treatment and irretrievable breakdown of the marriage, to which the husband replied. Subsequently, the parties agreed that they would each withdraw their answers to the complaint/counterclaim and would obtain a mutual divorce upon the ground of an irretrievable breakdown. A trial on the remaining issues ensued in May 2012, following which Supreme Court, among other things, granted a divorce, ordered equitable distribution of the parties' various assets and liabilities, awarded the wife durational spousal support and declined to award either party counsel fees. The husband appeals and the wife cross-appeals.

Initially, the findings of fact and conclusions of law, incorporated by reference into the judgment of divorce, read as follows: "the [wife] consents to the [husband] retaining his CPA practice and enhanced earning capacity, in exchange for [the marital residence and another parcel]." In accordance with this, the husband was awarded $255,000, representing the full value of the CPA practice, and $39,000, representing the full value of his enhanced earnings. Thus, per the plain language of the order, the husband was awarded 100% of both of these assets. However, on appeal, both of the parties agree that the manner in which Supreme Court allocated marital assets resulted in the wife effectively being awarded 50% of the value of the husband's professional practice and license,[2] a distributive award that the

---

[1]  Child support and custody are not at issue.

[2]  In distributing the marital property, Supreme Court awarded the wife assets that are comparable in value to the

husband contends was in error.

When distributing marital property, the trial court has "broad discretion" and is accorded "substantial flexibility in fashioning an appropriate decree based on what it views to be fair and equitable under the circumstances" (Mahoney-Buntzman v Buntzman, 12 NY3d 415, 420 [2009]; see Vertucci v Vertucci, 103 AD3d 999, 1001 [2013]). The record here demonstrates that this was a long-term marriage of over 40 years and that the wife provided support for the husband during much of his education. Among other things, she undertook primary responsibility for the home and raised their three children while the husband pursued his career. Moreover, the wife otherwise contributed to the husband's establishment of his professional practice. Under such circumstances, we are unpersuaded that Supreme Court's award regarding these assets was an abuse of discretion (see Litman v Litman, 280 AD2d 520, 522 [2001], lv denied 97 NY2d 613 [2002]; White v White, 204 AD2d 825, 827 [1994], lv dismissed 84 NY2d 977 [1994]).

The husband also contends that Supreme Court erred in calculating maintenance by failing to reduce the available income to reflect the distributive award of his professional practice and license. At issue is the rule against double counting, which provides that, "[o]nce a court converts a specific stream of income into an asset, that income may no longer be calculated into the maintenance formula and payout" (Grunfeld v Grunfeld, 94 NY2d 696, 705 [2005]). The husband's solely owned accounting firm is a service business for purposes of this rule (see Keane v Keane, 8 NY3d 115, 122 [2006]). Without further elaboration, Supreme Court utilized an annual income of $100,000 to calculate the maintenance award to be paid to the wife. By comparison, the fair market value of the husband's business was calculated using his reported annual income from 2007 through 2010, ranging from about $98,000 to $109,000. As such, it is evident that the court did not make the necessary adjustment to account for the distributive award of the business. Insofar as the license is

combined value of the husband's enhanced earnings and professional practice.

concerned, however, the record shows that the expert who prepared the joint valuation allocated compensation as between profits and payments for services rendered to avoid double counting and no adjustment is necessary. Given that the record is sufficiently developed, and in the interest of judicial economy, we will make the adjustment necessary to account for the distribution of the business (see Smith v Smith, 8 AD3d 728, 731 [2004]). Factoring in the aforementioned adjustment and considering the equitable distribution award as modified herein, we conclude that $50,000 should be utilized as the income available for maintenance purposes and reduce the maintenance award to $1,000 a month. However, inasmuch as Supreme Court properly cited several relevant statutory factors and gave a reasoned analysis, it did not abuse its discretion in awarding durational maintenance (see Domestic Relations Law § 236 [B] [6] [a] [1]-[20]; Curley v Curley, 125 AD3d 1227, 1228 [2015]; Alecca v Alecca, 111 AD3d 1127, 1129-1130 [2013]; Roberto v Roberto, 90 AD3d 1373, 1376 [2011]).

Next, "while the method of equitable distribution of marital property is properly a matter within the trial court's discretion, the initial determination of whether a particular asset is marital or separate property is a question of law" (DeJesus v DeJesus, 90 NY2d 643, 647 [1997]; accord Whitaker v Case, 122 AD3d 1015, 1016 [2014]). Although the record before us supports Supreme Court's determination that the wife's investment accounts — inherited from her father upon his death and never transferred into a joint account — remain her separate property (see Domestic Relations Law § 236 [B] [1] [d] [1]; Whitaker v Case, 122 AD3d at 1016-1017), we do find error in the court's classification of certain real property assets. Specifically, we agree with the wife that Supreme Court erred in determining that the Tudor City apartment and one of the St. Croix condominiums were marital property and not her separate property. The Doris Lane home, however, was properly classified as marital property.

"[P]roperty acquired during the marriage is presumed to be marital property, and the party seeking to establish that a particular item is indeed separate property bears the burden of proof in this regard" (Seidman v Seidman, 226 AD2d 1011, 1012 [1996]). Because the properties currently being discussed were

all acquired during the marriage, they are presumed to be marital in nature, and our inquiry relates solely to whether the wife met her shifted burden of demonstrating that such properties were separately owned by her (see Cease v Cease, 72 AD3d 1450, 1451 [2010]).  To this end, "evidence that property obtained during a marriage was a gift to only one spouse, if unrebutted, can satisfy the donee's burden to prove that it is separate property" (Keil v Keil, 85 AD3d 1233, 1236 [2011]; see Saia v Saia, 91 AD3d 1110, 1110 [2012]).  However, evidence that property has been conveyed to only one spouse is not necessarily dispositive as to whether the subject property is marital or separate (see Cease v Cease, 72 AD3d at 1451).

Addressing the home on Doris Lane first, the wife testified that, in 1978, her father – who jointly owned the property with her brother – allowed the parties to live in the home in exchange for a small monthly fee that, apparently, was used to pay the associated property taxes.  The wife's father thereafter conveyed the property solely to her in 1997 and, consequently, only her name was on the deed.[3]  The husband, on the other hand, testified that the $250 fee that the parties paid to the wife's father each month was in an effort to purchase the property – an effort that was successful after approximately 10 years – and that all taxes and utilities were paid from marital income.  The husband further explained that the home was deeded solely to the wife because, by that point in time, he had become the sole owner of the accounting firm and such conveyance operated to reduce personal risk should he be sued in his professional capacity.  According due deference to Supreme Court's determination, which credited the husband's testimony and found that the economic and noneconomic contributions by him weighed in favor of deeming this parcel a marital asset, we find that the wife was unable to meet her shifted burden to rebut the marital property presumption.  Thus, the Doris Lane home was properly characterized as marital

---

[3]   The parties resided together in the Doris Lane home until approximately 2000.

property.[4]  However, in light of the discussion set forth above,
we nonetheless find no error in Supreme Court's determination to
award 100% of the agreed-upon value of the Doris Lane property to
the wife.

Next, with respect to the ownership of the Tudor City
apartment, it was purchased in July 1997 with the acquisition of
certain stock in the wife's name, paid for entirely with funds
from one of her investment accounts.  Because property acquired
in exchange for separate property, even when acquired during the
marriage, is indeed separate property (see Owens v Owens, 107
AD3d 1171, 1172-1173 [2013]; Chernoff v Chernoff, 31 AD3d 900,
902-903 [2006]), we find that the wife sufficiently met her
burden of overcoming the marital property presumption, and the
Tudor City apartment should have been declared her separate
property.  Supreme Court erred in finding otherwise.  Likewise,
documentary and testimonial evidence make it clear that one of
the St. Croix condominiums, unit J-10 specifically, was purchased
solely using the wife's separate property as collateral for a
loan and is deeded only to her.  Therefore, this asset also
constitutes the wife's separate property.[5]  Accordingly, the
Tudor City apartment and unit J-10 need not be sold as previously
directed by Supreme Court.

Keeping in mind that there is no requirement that each item
of marital property be distributed equally and the trial court
has discretion in fashioning a division of property (see Bellizzi
v Bellizzi, 107 AD3d 1361, 1362 [2013]), the parties should

---

[4]  It should be noted, however, that, because the Doris
Lane home is marital property, it was unnecessary for the husband
to provide evidence of an appreciation in the value of the home
due to his efforts before becoming entitled to an equitable share
in its value (see generally Ceravolo v DeSantis, 125 AD3d 113,
116 [2015]).

[5]  The same cannot be said for unit N-3, which was
purchased with the use of marital property as collateral.  Thus,
that parcel was properly deemed marital property.

retain their IRA accounts, even despite the wife's somewhat larger account (see Musacchio v Musacchio, 107 AD3d 1326, 1330 [2013]). While it is true that Supreme Court incorrectly stated the value of the wife's account — deeming its value to be $23,000 instead of $56,365.91 — we find this error to be harmless.

Finally, in light of the pertinent statutory factors, we discern no reason to disturb Supreme Court's determination to deny the wife's request for counsel fees (see e.g. Soles v Soles, 41 AD3d 904, 908 [2007]). The parties' remaining contentions have been considered and have been found to be without merit.

Lahtinen, J.P., Lynch and Devine, JJ., concur.

ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) awarded defendant maintenance in the amount of $1,500 per month, (2) deemed the Tudor City apartment and the St. Croix condominium, unit J-10, to be marital property, and (3) ordered said properties to be sold; defendant is awarded maintenance in the amount of $1,000 per month and the Tudor City apartment and said St. Croix condominium are classified as defendant's separate property; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court