Rosenfeld v Rosenfeld
2026 NY Slip Op 04048
June 25, 2026
Appellate Division, First Department
Gesmer, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Eric Rosenfeld, Respondent,
v
Rosanna Galvanno Rosenfeld, Appellant.

Supreme Court, Appellate Division, First Judicial Department
Decided and Entered: June 25, 2026
Index No. 309389/18|Appeal No. 5520|Case No. 2024-04817|
Dianne T. Renwick
Sallie Manzanet-Daniels Ellen Gesmer John R. Higgitt Marsha D. Michael

Hasapidis Law Offices, South Salem (Annette G. Hasapidis of counsel), for appellant.
Chemtob Moss Forman & Beyda, LLP, New York (Joshua Forman and Natalie S. Maier of counsel), for respondent.

Defendant appeals from an order of the Supreme Court, New York County (Douglas E. Hoffman, J.), entered on or about June 28, 2024, which to the extent appealed from as limited by the briefs, denied defendant mother's motion for pendente lite child support in the amount of $25,000/month plus a $10,000/month travel allowance.

Gesmer, J.
[*1]
Since at least 1971, the Court of Appeals and this Court have approved orders suspending child support in appropriate but rare cases. The doctrine permitting suspension of a child support obligation based on constructive emancipation (see Matter of Roe v Doe, 29 NY2d 188, 192-193 [1971]) or unjustifiable interference with visitation rights (see Feuer v Feuer, 50 AD2d 772, 773 [1st Dept 1975]; Callender v Callender, 37 AD2d 360, 362 [1st Dept 1971]) developed through case law. The development of that doctrine pre-dates the enactment of Domestic Relations Law § 241 in 1978 (L 1978, ch 232), which permits suspension of maintenance based on visitation interference. In doing so, Domestic Relations Law § 241 codified a principle as to maintenance that had already been developed in case law with regard to child support.FN1
A parent has a legal duty to support their child until the child is 21, regardless of the existence of a child support order (Domestic Relations Law § 240[1-b][b][2]; Family Ct Act § 413[1][a]; see also Roe, 29 NY2d at 192-193 ["It has always been, and remains a matter of fundamental policy within this State, that a (parent) of a minor child is chargeable with the discipline and support of that child"]). Even after the enactment of Domestic Relations Law § 241, courts have determined whether to suspend a parent's child support obligation based solely on judge-made law (see Usack v Usack, 17 AD3d 736 [3d Dept 2005]; Matter of Smith v Bombard, 294 AD2d 673 [2d Dept 2002], lv denied 98 NY2d 609 [2002]).
In this case, in an order dated December 27, 2021, issued more than two years before the order on appeal, Supreme Court decided custody and the mother's motion for pendente lite support. Based on clear and convincing evidence presented at the 35-day custody trial, the court determined that the mother had deliberately and actively alienated the child from the father in "one of the most clear-cut and disturbing examples of parental alienation that this court has observed through thousands of custody cases over many years." Accordingly, the court reasonably determined that this is one of the unfortunate and rare situations where suspension of the noncustodial parent's child support obligation was warranted. Specifically, the court decided the pendente lite motion by directing the father to pay 90% of the child's unreimbursed medical and mental health expenses and otherwise suspended the father's child support obligation until the child's visitation with the father was "meaningfully resumed" or "there is otherwise good cause to resume the support" (see Rodman v Friedman, 112 AD3d 537, 537 [1st Dept 2013]).
[*2]
The custody order contained detailed provisions intended to assist the parties in repairing the relationship between the father and child as a component of the parenting time plan, including requiring the mother to work with a parenting coach through December 2023, attend family therapy, and complete intake with the Building Family Resilience program. The court's pendente lite order was also based on the father's statement that he loves the child and would "continue to pay for 100% of her private school expenses, multiple extra-curricular activities, day camps and medical care without interruption . . . ., with or without a court order," and the mother's concession that he had done so. In reaching its decision, the court also considered that the mother has considerable assets of her own, including both separate property and equitable distribution received pursuant to the parties' prenuptial agreement. Critically, the mother did not appeal from the 2021 order.
The order now appealed from denied the mother's subsequent motion for an award of pendente lite child support based on her claim that she had complied with the 2021 order and that the father now had meaningful parenting time with the child. The motion court noted that this was essentially a motion to modify the earlier pendente lite award. However, the mother failed to present any facts establishing either good cause or that visitation had meaningfully resumed, as required by the prior order, from which she never appealed. Nor did she demonstrate exigent circumstances requiring modification of the earlier pendente lite award (see Anonymous v Anonymous, 167 AD3d 527, 527 [1st Dept 2018]).FN2
[*3]
Indeed, the mother's submissions either admitted or did not deny the following assertions in the father's affidavit: (1) as of June 22, 2023, the mother still had not bothered to read the court's December 27, 2021 order, which set out specific directives for the mother to follow to help repair the relationship between the father and the parties' child; (2) in early 2022, she fired the parenting coach, even though the December 27, 2021 order had directed her to work with a parenting coach through December 2023; (3) she continued to deny to the family therapist that she had alienated the child, despite the court's finding that she had and its direction that she participate in family therapy; (4) she canceled the father's parenting time for the child's spring break in 2022; (5) she told the child she could attend a friend's bar mitzvah instead of going on one of two scheduled four-day visits with the father during summer 2022; (6) she took the child to California when the child was scheduled to spend her birthday with the father in April 2023; (7) approximately one month after she made the instant motion, despite the fact that the parties have joint legal custody, she unilaterally extended the child's sleepaway camp stay and canceled the father's summer parenting time; and (8) as of August 2023, the father and child had only one of their scheduled alternate weekend overnight visits since 2022.
Accordingly, we disagree with the dissent that the record does not support a finding that the mother continued to interfere with the father's relationship and parenting time with the child.FN3 Indeed, some of the mother's actions directly violated the 2021 order. Therefore, the court appropriately exercised its discretion in determining that the record before it did not demonstrate that visitation between the child and the father had "meaningfully resumed."
As the motion court found, the child's reasonable and appropriate needs are being met (see Whitaker v Case, 122 AD3d 1015, 1020 [3d Dept 2014] [suspension of child support appropriate, pending custodial parent's demonstration of good faith effort to assist in therapeutic process needed to reunite noncustodial parent with children, where there was no evidence of risk to the children becoming public charges]; Usack, 17 AD3d at 739-740 [same]). It is undisputed that the mother and child continue to reside in a 1,500 square foot luxury apartment with views of Central Park and that the father continues to pay all of the child's expenses for private school, extracurricular activities and tutoring, in addition to 90% of her unreimbursed medical and mental health expenses.
The dissent relies primarily on Domestic Relations Law § 241. However, neither the order now on appeal, nor the 2021 decision suspending the father's obligation to pay child support because the mother had "unequivocally been alienating the child" relies on, or even mentions, Domestic Relations Law § 241.FN4
[*4]
Finally, the best remedy for a perceived inequity in a pendente lite award is a speedy trial. Accordingly, we need not modify a pendente lite award where, as here, the party seeking modification has not shown exigent circumstances (Anonymous, 167 AD3d at 527).
Under these circumstances, Supreme Court did not improvidently exercise its discretion in determining that the mother's efforts to comply with the terms of the 2021 order did not result in the child having regular visitation with the father as set forth in that order, and that there was not otherwise good cause to modify the 2021 order as to pendente lite child support.
Accordingly, the order of the Supreme Court, New York County (Douglas E. Hoffman, J.), entered on or about June 28, 2024, which to the extent appealed from as limited by the briefs, denied defendant mother's motion for pendente lite child support in the amount of $25,000/month plus a $10,000/month travel allowance, should be affirmed, without costs.
All concur except Michael, J. who dissents in an opinion.
Michael, J. (Dissenting),

The court failed to provide a sufficient basis to deny defendant mother's request for pendente lite child support and therefore, I respectfully dissent. The court did not make the requisite finding pursuant to Domestic Relations Law § 241 and relevant case law that the mother has continued to deliberately frustrate or actively interfere with plaintiff father's visitation rightsto support denial of the mother's motion for temporary child support or to consider whether there is otherwise good cause to grant support. Accordingly, I would reverse and remand for further proceedings as discussed below.
I.
Domestic Relations Law § 241 provides in pertinent part:
When it appears to the satisfaction of the court that a custodial parent receiving alimony or maintenance pursuant to an order . . . has wrongfully interfered with or withheld visitation rights provided by such order . . . the court, in its discretion, may suspend such payments or cancel any arrears that may have accrued during the time that visitation rights have been or are being interfered with or withheld.FN5
The statute expressly permits the court to suspend maintenance payments without reference to suspension of child support payments, and for good reason. Suspension of spousal maintenance as opposed to child support penalizes the parent while avoiding potentially harming the child for the parent's misconduct (see Merril Sobie, Prac Commentaries, McKinney's Cons Laws of NY, Family Court Act § 413 ["Suspension (of child support) harms the guilty parent and may or may not induce her to ameliorate the alienation, but unfortunately also harms her innocent children"]; Usack v Usack, 17 AD3d 736, 739 [3d Dept 2005] [referring to alteration of child support obligations due to visitation interference as an "imperfect remedy"]).
[*5]
Yet whether the Legislature intentionally omitted child support from the statute is unclear. The statute's legislative history provides no insight on this issue (see Hudson v Hudson, 97 Misc 2d 558, 561 [Sup Ct, NY County 1978] ["Insofar as extrinsic aids to interpretation (of Domestic Relations Law § 241) are concerned such as a legislative memorandum, the memorandum by the legislative sponsor of the bill and other documents that the court has obtained, the court finds no guidance"]). Nor do the majority's pre-enactment case citations from the 1970's provide clear insight into the Legislature's intent. The statute "may have been intended to codify the existing case law as to both child support and alimony. In fact however the Legislature codified 'half a loaf' and it is not clear as to whether it actually intended that the 'half a loaf' be alimony" (id.).
In the absence of a clear restriction, it has become accepted practice through precedent and application of the statute, that "a noncustodial parent may affirmatively move the court for an order suspending spousal or child support payments where the custodial parent has wrongfully interfered with visitation" (Alan D. Scheinkman, Prac Commentaries, McKinney's Cons Laws of NY, Domestic Relations Law § 241; see e.g. Matter of Kanya J. v Christopher K., 175 AD3d 760, 763 [3d Dept 2019] ["a court may suspend child support payments for a period where the custodial parent (has) wrongfully interfered with or withheld visitation"] [internal quotation marks omitted] ,citing Domestic Relations Law § 241, lv denied 34 NY3d 906 [2019]; Matter of Luke v Luke, 90 AD3d 1179, 1182 [3d Dept 2011] [same]; Matter of Lew v Sobel, 91 AD3d 648, 648 [2d Dept 2012] [father's motion to hold support payments in escrow granted "(i)n light of the father's showing . . . that the mother continued to deliberately interfere with his visitation rights"] [citing Domestic Relations Law § 241]).
[*6]
To suspend support, the guilty parent's conduct must rise to the level of "deliberate frustration [of] or active interference" with the other parent's visitation rights (see Zinger v Robertson, 217 AD3d 471, 471 [1st Dept 2023]; Matter of Harry T. v Lana K., 156 AD3d 511, 512 [1st Dept 2017]; Rodman, 112 AD3d at 537). To that end, the court's discretion to suspend or withhold payments lasts only so long as there remains such wrongful interference (see Domestic Relations Law § 241; Matter of Lew v Sobel, 46 AD3d 893, 895 [2d Dept 2007]; Gade v Gade, 99 AD2d 796, 796 [2d Dept 1984]). Accordingly, courts have suspended support "pending further court order upon a showing that the mother has made good faith efforts to actively encourage and restore the father's relationship with the children" (Matter of Dobies v Brefka, 83 AD3d 1148, 1153 [3d Dept 2011]; see also Whitaker v Case, 122 AD3d 1015, 1020 [3d Dept 2014] [suspending the wife's child support obligation "pending the husband's demonstration of a good faith effort to assist in the therapeutic process undoubtably needed to reunite the wife with the children"]; Lew, 46 AD3d at 895 [directing the father's child support payments to be held in escrow until "the mother can certify, to the satisfaction of the Supreme Court . . . the absence of her interference with the father's visitation rights"]; Usack, 17 AD3d at 740 [suspending the mother's support obligation "pending further court order upon a showing that (the father) has made good faith efforts to actively
encourage and restore (the mother's) relationship with the children"]).
II.
On December 27, 2021, the court denied the mother's request for pendente lite maintenance and child support based upon her financial circumstances and severe alienation. The court also denied the mother's request to order the father to pay the child's add-on expenses, except for unreimbursed medical expenses. Two and a half years later, on June 27, 2024, the court's order on appeal again denied temporary child support to the mother in response to her second child support motion.
[*7]
In its 2024 decision, the court failed to consider whether the mother continued to severely alienate the child during the intervening 2 ½ year period between the 2021 and 2024 decisions to justify continued denial of support (see Rodman, 112 AD3d at 537 [suspension of child support payments warranted where "alienation has continued unabated and (the mother's) conduct remains unchanged" (internal quotation marks omitted)]; Lew, 91 AD3d at 648 [child support held in escrow because "the mother continued to deliberately interfere with his visitation rights"]). Specifically, the court did not determine whether the mother continued to actively interfere or deliberately frustrate the father's visitation rights, despite evidence presented by the mother that since the 2021 order, she met with a parenting coach multiple times and retained a parenting coach at the time of the court's June 2024 oral decision, participated in a family therapy program, and made efforts to coordinate visitation with the father (though I decline to comment on the sufficiency of this evidence).
On June 10, 2024, the court stated on the record that "even if the mother, even if, I focus on the 'if' and it may well be just an 'if,' the mother is not alienating the child from the father, but is, in fact, seeking to repair the relationship with the father . . . the reason for [the father-child relationship] still remains the alienating conduct that had occurred by the mother set forth in detail in [t]he Court's decision and order from a few years back." The court further stated that it "has monitored and . . . recognizes, it's certainly my belief without making explicit findings, that both parties have made different efforts toward repairing the relationship between the father and the child." Nevertheless, the court held that given that the father does not have a reasonable relationship with the child based upon the mother's prior conduct, "[it is] not appropriate to order the father to pay any child support of any kind other than voluntarily."
In its written decision dated June 27, 2024, the court reiterated that "even if each parent is making some effort . . . the effect remains not in controversy: the child remains alienated from her father. Whether [the mother] has made minimal or greater than minimal efforts at un-alienating the parties' daughter from [the father] is not the question, as it remains the case (indeed, the law of the case, post-trial) that [the mother] alienated the child from [the father]" (emphasis added). The court noted that the mother was "apparently" somewhat trying but that her "apparent[ ]" actions are too late.
[*8]
In short, the court treated the mother's motion as "in essence, a reconsideration of the Court's December 27, 2021 Decision After Trial" and based its decision on whether to continue to deny child support on the mother's previous actions and their continued effects. The court not only failed to consider whether the mother continued to actively interfere with visitation but also failed to sufficiently consider its own prior directives in the 2021 order, including its denial of pendente lite child support until "there is otherwise good cause to resume the support."
The majority holds that the record supports a finding that the mother continued to interfere with the father's visitation sufficient to deny the mother's child support motion. The majority even makes factual findings that the mother violated the 2021 order. It is premature for this Court to make those determinations when there has been no hearing on visitation interference since the 2021 order, and when the motion court not only made no such findings FN6 in the order on appeal but specifically expressed an unwillingness to make factual findings. The court stated on the record that it recognized "without making explicit findings . . . both parties have made different efforts toward repairing the relationship between the father and the child." It instead denied support "even if each parent is making some effort," upon the belief that its prior alienation finding was "law of the case" (emphasis added).
Under the plain language of the order, the mother could never obtain pendente lite support since the order binds her during the pendency of the action to the findings of the 2021 order despite any meaningful efforts on her part to repair the relationship between the father and the child. This is an unfortunate reality given that this matter has been pending for years and may continue to span a considerable length of time.
The father emphasizes the court's finding that his relationship with the child may never be repaired. However, if the lingering effects of past alienation, as opposed to the custodial parent's present conduct, are determinative, then the noncustodial parent could gain a financial windfall by not having to pay support despite good faith efforts by the custodial parent to encourage visitation. It would also negate the purpose of the statute by making the custodial parent's efforts postjudgment or order irrelevant.
[*9]
Finally, the fact that the mother allegedly has access to significant assets and that the child is not in danger of becoming indigent is not dispositive (see Merril Sobie, Prac Commentaries, McKinney's Cons Laws of NY, Family Court Act § 413 ["children may be significantly harmed through the withdrawal of support, even in the absence of indigency sufficiently severe to trigger public assistance eligibility"). The purpose of temporary child support is to not only ensure the child's reasonable needs are met but to maintain the status quo to provide children with a sense of continuity while the action is pending (see Anonymous v Anonymous, 63 AD3d 493, 498 [1st Dept 2009], appeal dismissed 13 NY3d 921 [2010]; Kaufman v Kaufman, 131 AD3d 939, 944 [2d Dept 2015]). The mother alleges that the father's net worth has ranged from $68 million to more than $90 million, while it is undisputed that she is a stay-at-home mother receiving financial assistance from her father to care for herself and the child. While the mother and child are by no means destitute, the mother alleges that she relied on the child's father for support during the marriage and without that support, the child's lifestyle while in the mother's care is substantially different than when the parties resided together during the marriage.
The majority notes that the father continues to voluntarily pay for the child's private school expenses which, if true, is certainly commendable, but the mother remains responsible for the child's other myriad necessities, including housing, utilities, school supplies, extracurricular activities, clothing, transportation costs, and other expenses. Certainly, where the mother relied on the father for support during the marriage, there can be no dispute that the denial of child support to the mother pending this litigation contravenes the status quo.
III.
In sum, I disagree with the majority's finding that Supreme Court providently exercised its discretion in denying support upon determining that the mother's efforts failed to result in regular visitation between the father and child. Under the circumstances of this case, including the passage of time since the 2021 order, the substantial disparity in the parties' financial circumstances, and the evidence in the record that the mother has made efforts to comply with the court's 2021 directives and to repair the father-child relationship, the court did not make sufficient findings to continue to deny support. The court should have considered, among other things, whether the mother is presently frustrating or actively interfering with the father's visitation rights to continue its order of suspension, and it failed to do so.
[*10]
The majority is correct that speedy trials can remedy a perceived inequity in a pendente lite award. However, in the absence of a speedy trial — a common occurrence in matrimonial actions, as this years-long case demonstrates — the best remedy for inequity is the equitable application of the appropriate legal analysis. Accordingly, I would reverse and remand for a determination and consideration of an appropriate award of pendente lite child support if the court finds the high bar under Domestic Relations Law § 241 and applicable case law (see Cervera v Bressler, 90 AD3d 803, 807 [2d Dept 2011], lv denied 19 NY3d 809 [2012]) has not been met, or upon good cause
shown in accordance with the court's 2021 order.
Order, Supreme Court, New York County (Douglas E. Hoffman, J.), entered on or about June 28, 2024, which to the extent appealed from as limited by the briefs, denied defendant mother's motion for pendente lite child support in the amount of $25,000/month plus a $10,000/month travel allowance, affirmed.
Opinion by Gesmer, J. All concur except Michael, J.
who dissents in an opinion.
Renwick, P.J., Manzanet-Daniels, Gesmer, Higgitt, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 25, 2026

Footnotes

Footnote 1
In 1986, Domestic Relations Law § 241 was amended in connection with the enactment of the New York State Support Enforcement Act of 1986 (L 1986, ch 892) to clarify that "interference with visitation rights is not a ground for the cancellation of child support arrears . . . although such interference may provide a basis for the prospective suspension of child support" (Doyle v Doyle, 198 AD2d 256, 257 [2d Dept 1993]; see also Ledgin v Ledgin, 36 AD3d 669, 670 [2d Dept 2007]). This amendment is consistent with the prohibition on reduction or cancellation of child support arrears, which is not at issue in this appeal (see Domestic Relations Law § 236[B][9][b]; Family Court Act §§ 451; 460[1]; Matter of Dox v Tynon, 90 NY2d 166, 170 [1997]).

Footnote 2
We disagree with the dissent that the motion court failed to consider whether the mother had complied with the 2021 order, whether she continued to actively alienate the child from the father, and whether she demonstrated good cause to modify the 2021 order's pendente lite child support determination. The motion court found that the child remained alienated from her father; that the mother had made either "minimal" or "greater than minimal" efforts that were insufficient to remedy the harm she had caused; that the child's reasonable and appropriate needs are being met; and that there was "no factual or legal basis" on which to grant the mother's motion.

Footnote 3
The dissent disapproves of our review of the factual record. However, we are permitted to review both facts and law (CPLR 5501[c]). The mother's failure to deny the father's assertions about her failure to comply with the 2021 order, despite the opportunity to do so, are properly deemed admissions (see Matter of Miguel S., 140 AD2d 202, 204 [1st Dept 1988]). Moreover, to the extent that the dissent relies on the motion court's decision to deny the father's cross-motion for contempt, that cross-motion is not included in the record. That the court granted the cross-motion solely to the extent of directing that the parties ensure that the child does not leave her cell phone at the mother's home and that the mother is not to communicate with the child during the father's parenting time except in emergency does not constitute a finding that the mother complied with all of the directives in the 2021 order.

Footnote 4
Nor does this Court's citation to Domestic Relations Law § 241 in Rodman (112 AD3d at 537) support the dissent's assertion that the statute is applicable to this case beyond its prohibition on cancellation of child support arrears. Indeed, the citation to the statute in Rodman is preceded by a citation to Ledgin (36 AD3d at 670), which held that interference with visitation "is not a ground for the cancellation of child support arrears." Similarly, each of the other, noncontrolling cases cited by the dissent expressly cites Domestic Relations Law § 241 for the proposition that child support may be suspended only prospectively (Matter of Kanya J. v Christopher K., 175 AD3d 760, 763 [3d Dept 2019] ["the suspension must be prospective"]; Matter of Lew v Sobel, 46 AD3d 893, 895 [2d Dept 2007][frustration of visitation "can warrant the suspension of future child support"]).

Footnote 5
The majority notes that neither relevant Supreme Court order in this case explicitly referenced nor relied on Domestic Relations Law § 241, but as discussed below, the court based the order on appeal upon its prior 2021 decision, which relied upon case law applying Domestic Relations Law § 241 (see e.g. Rodman v Friedman, 112 AD3d 537, 537 [1st Dept 2013]). In any event, the absence of an explicit reference to the relevant Domestic Relations Law statute does not negate its direct application to the circumstances here nor limit our consideration of the statute and the parties' related arguments on appeal (see Nuevo El Barrio RehabilitaciÓn de Vivienda y EconomÍa, Inc. v Moreight Realty Corp., 87 AD3d 465, 466 [1st Dept 2011]).

Footnote 6
To the contrary, the court's June 2024 oral and written decisions denied the father's application to hold the mother in contempt.